# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-1370

_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Plaintiff - Appellee, | * |
| | *   Appeal from the United States |
| v. | *   District Court for the |
| | *   District of South Dakota. |
| Derwin K. Sharpfish, also known as | * |
| Dervwin K. Sharpfish, | * |
| | * |
| Defendant - Appellant. | * |

_____

Submitted: October 21, 2004
Filed: May 23, 2005

_____

Before MORRIS SHEPPARD ARNOLD, JOHN R. GIBSON, and SMITH, Circuit
Judges.

_____

JOHN R. GIBSON, Circuit Judge.

Derwin K. Sharpfish appeals from the sentence imposed on him following his
plea of guilty to a charge of aggravated sexual abuse of a minor. The sentence of 262
months' imprisonment was based in part on a finding that Sharpfish had used force
in committing the crime and on a finding that he had engaged in a pattern of
prohibited sexual conduct. Sharpfish contends that the evidence does not support the
finding that he used force or engaged in a pattern of prohibited conduct. He also
contends that the court erred in relying on the testimony of the probation officer to
support its findings of fact. We affirm the sentence imposed.

Sharpfish pleaded guilty to aggravated sexual abuse of his daughter, R.S., who was between two and four years old at the time of the abuse. Sharpfish objected to certain factual statements in the presentence investigation report.

At the sentencing hearing, the government presented two witnesses who testified about the issues of use of force and pattern of prohibited conduct. First was FBI Agent Kevin McGrane, who testified about statements R.S. made to Wanda Bachman, R.S.'s foster parent. McGrane also testified about medical evidence from a second victim, S.F.; statements Sharpfish himself had made to McGrane; statements R.S. made in an interview; statements Sharpfish's girlfriend made to the FBI; and a report of the South Dakota Department of Social Services regarding statements and conduct of S.F. The second witness, Cynthia Wixon-Loecker, was the probation officer who prepared the presentence investigation report. Her investigation included a review of all the investigative reports, police reports, social services reports, forensic interviews, and other documentation, as well as an interview of Sharpfish. She identified the sources for the factual assertions in the presentence report that Sharpfish was disputing. Sharpfish's counsel did not object to either witness's testimony as hearsay, although he did object to one question on Sixth Amendment grounds because he was unable to cross-examine the declarant. That objection was overruled.

The district court[1] found that the evidence established that Sharpfish used force in committing the crime. The court stated that there was evidence of ongoing physical abuse of R.S. of the type that "can easily be used to train a child for sexual abuse." The court also relied on statements by R.S. that Sharpfish "did this [sexual abuse] to her often, repeatedly, and that he was too heavy when he was on top of her, and he hurts her." The court found that R.S.'s report of Sharpfish using his feet to

---

[1]The Honorable Charles B. Kornmann, United States District Judge for the District of South Dakota.

abuse her sexually was consistent with reports of his conduct with S.F. Further, R.S. said that she "would tell him no" and that Sharpfish would not listen. The court also relied on R.S.'s extremely tender age of three and a half or younger. The court distinguished other cases in which the evidence of force was inadequate, saying, "[W]e have actual injuries and actual physical abuse."

The court next found that Sharpfish had engaged in a pattern of prohibited sexual conduct in that he also abused S.F., the three-year-old niece of Sharpfish's girlfriend. In support of that finding, the court mentioned Katie Folson, Sharpfish's girlfriend, who had been reported as saying that she had seen Sharpfish ejaculating on S.F. and using his foot to abuse S.F. sexually. The court also referred to statements by R.S. and S.F. that Sharpfish had touched or hurt S.F. in her genital area.

On appeal, Sharpfish argues that the evidence does not support a finding that Sharpfish used force in committing the crime or that he engaged in a pattern of prohibited sexual conduct. He also contends that the court could not base findings on the testimony of Wixon-Loecker because she testified to statements by out of court declarants.

While this case was pending on appeal, the Supreme Court announced its decision in United States v. Booker, 125 S. Ct. 738, 765 (2005), which changed the standard for our review of sentencing decisions by imposing a standard of reasonableness as to the ultimate sentencing determination. Booker notwithstanding, we continue to review the district court's findings of fact on sentencing for clear error and its application of the sentencing guidelines to the facts de novo. United States v. Mathijssen, -F.3d-, No. 04-1995, 2005 WL 1005003, at *1-2 (8th Cir. May 2, 2005).

The court held that Sharpfish's use of force led to application of a base offense level of 20 under U.S.S.G. § 2A3.4(a)(1). That section applies if the offense involved

conduct described in 18 U.S.C. § 2241(a) or (b).  Application note 2 to § 2A3.4 states:

> For purposes of subsection (a)(1), "conduct described in 18 U.S.C. § 2241(a) or (b)" is engaging in, or causing sexual contact with, or by another person by: (A) using force against the victim; [or] (B) threatening or placing the victim in fear that any person will be subjected to death, serious bodily injury, or kidnapping . . . .

Sharpfish contends that his case is like two others in which we held the government failed to prove that the defendant used force to engage in the sexual contact.  In United States v. Blue, 255 F.3d 609, 613 (8th Cir. 2001), we held that "size difference alone cannot establish use of force."  Where there was no evidence that the defendant affirmatively used his size advantage to effect the crime, merely possessing such an advantage did not warrant the enhancement.  In United States v. Crow, 148 F.3d 1048, 1050 (8th Cir. 1998), we reversed a sentence based on a finding of use of force where the victim testified that the defendant removed her clothes although she did not want him to and that he hurt her.  We held there that the record was

> devoid of any evidence regarding Crow's size in relation to the victim's, the victim's (perceived) ability to escape the sexual attack, or what exactly the victim meant when she stated Crow "hurt" her–i.e., whether Crow hurt her to compel her to submit to the sexual contact, or whether the contact itself hurt her.

148 F.3d at 1050.  In this case, unlike Crow, there was evidence that Sharpfish had a great size advantage over the victim: he was said to weigh 235 to 240 pounds, whereas R.S. was three years old.  And unlike the defendant in Blue, Sharpfish had used his size advantage to brutalize the child over time by beating and kicking her; the district court could well infer that this ongoing physical abuse was a program of domination that affected R.S.'s ability to resist the sexual aggression.  See United

-4-

States v. Gabe, 237 F.3d 954, 961 (8th Cir. 2001) (use of force where defendant had hit child victim and her mother on previous occasion and victim said she obeyed defendant on occasion of crime because she was afraid of him). Moreover, R.S. said that Sharpfish lay on her, despite her telling him "no," and that he hurt her "down there." This evidence warrants the conclusion that Sharpfish immobilized the victim by his weight, simultaneously with the sexual abuse. A defendant who physically restrains a victim from escaping uses "force" in committing the crime as contemplated by section 2241(a). United States v. Allery, 139 F.3d 609, 611-12 (8th Cir. 1998). The evidence is ample to support the finding of the use of force to commit the crime. See United States v. Knife, 9 F.3d 705, 706 (8th Cir. 1993) (upholding finding of use of force where 210-pound defendant lay on child victim and held her down during sexual abuse and struck her on at least one occasion, though not during sexual contact; record also included evidence that defendant threatened victim).

Sharpfish also contends that the district court clearly erred in finding that he engaged in a pattern of prohibited sexual conduct, leading to an increase in offense level under U.S.S.G. § 4B1.5(b)(1). The district court recited evidence that Sharpfish had sexually abused R.S. often and repeatedly, as well as evidence that Sharpfish sexually abused S.F. with his foot. The evidence was adequate to support the finding and the enhancement.

Finally, Sharpfish contends that the district court erred in relying on Wixon-Loecker's testimony because she testified to hearsay. Sharpfish made no hearsay objection at the hearing. Sharpfish contends that his objection to the presentence report was adequate to raise the issue; to the contrary, the objection was to the report itself, not to the probation officer's live testimony. After Sharpfish objected to the presentence report, the government responded by putting the probation officer on the stand, where Sharpfish had the opportunity to cross examine her. See United States v. Wise, 976 F.2d 393, 404-05 (8th Cir. 1992) (en banc) (upholding sentence based on testimony of probation officer reciting hearsay). Sharpfish did make a Sixth

Amendment confrontation clause objection to one question only, but the rest of Wixon-Loecker's testimony came in without any objection of the kind. When a defendant fails to object to admission of evidence below, we review the issue for plain error. United States v. Shepard, 329 F.3d 619, 621-22 (8th Cir. 2003). At sentencing, the district court may consider relevant hearsay testimony if it is accompanied by sufficient indicia of reliability to support the conclusion that it is probably accurate. Knife, 9 F.3d at 706 (quoting Wise, 976 F.2d at 402). Under this standard, we see nothing rising to the level of plain error.

After briefing in this case, the Supreme Court decided Blakely v. Washington, 124 S. Ct. 2531 (June 24, 2004), which cast doubt on the validity of the United States Sentencing Guidelines. Sharpfish had not preserved an objection to the use of the Sentencing Guidelines in the district court, but he promptly filed a letter under Rule 28(j) and sought leave to file a supplemental brief on the Blakely issue. We ruled that the panel would consider the issue, but that we did not require further briefing. Order of September 7, 2004. While we held the case in anticipation of further clarification of Blakely, the Supreme Court decided United States v. Booker, 125 S. Ct. 738 (Jan. 12, 2005). Under Booker, "Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." Id. at 756. In order to avoid violating this newly clarified Sixth Amendment right, the Supreme Court excised key provisions of the Sentencing Reform Act of 1984, with the result that the United States Sentencing Guidelines are no longer to be viewed as mandatory, but as advisory only. Id. at 764.

Sharpfish was sentenced on the basis of fact-based sentencing enhancements that were not tried to a jury. Because Sharpfish did not object below to the constitutionality of the Sentencing Guidelines, we must consider whether the district court's application of enhancements under the sentencing guidelines and its

application of the guidelines themselves as mandatory, rather than advisory, constitute plain error. In order to conclude that the district court's use of the guidelines in sentencing constituted plain error, we would have to determine that there is a reasonable probability that Sharpfish would have received a more favorable sentence but for the error. United States v. Pirani, -F.3d-, No. 03-2871, slip op. at 11, 2005 WL 1039976 (8th Cir. April 29, 2005) (en banc).

We have reviewed the record carefully. The district court catalogued the various factors relevant to Sharpfish's sentence and commented: "These are horrible crimes." The court stated, "This is not the worst case of force that I've seen, of course, by any means. And as Mr. Albright argued, it's somewhat of a close issue. By close, again I mean, it's not the worst case of force that I've ever seen in one of these type cases." The court sentenced Sharpfish to the low end of the guidelines range. Pirani held that sentencing at the low end of the range does not show a reasonable probability that the court would have imposed a more lenient sentence had it known it could do so. Id. at 12. Our review of the district court record does not reveal any significant evidence that the district court would have imposed a more lenient sentence if it had considered the guidelines advisory rather than mandatory. "[W]here the effect of the error on the result in the district court is uncertain or indeterminate–where we would have to speculate–the appellant has not met his burden of showing a reasonable probability that the result would have been different but for the error." Id. at 13 (quoting United States v. Rodriguez, 398 F.3d 1291, 1301 (11th Cir. 2005), pet'n for cert. filed No. 04-1148 (Feb. 23, 2005)). Consequently, we cannot say that the sentence imposed was the product of plain error.

We affirm the sentence imposed.

_____