**NOT FOR FULL-TEXT PUBLICATION**
**File Name: 07a0789n.06**
**Filed: November 9, 2007**

**No. 06-4077**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| Plaintiff-Appellee, | ) | STATES DISTRICT COURT FOR THE |
| | ) | NORTHERN DISTRICT OF OHIO |
| v. | ) | |
| | ) | |
| ROBERT DARWAY | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |
| | ) | |

**Before: NORRIS, GIBBONS, and ROGERS, Circuit Judges.**

**JULIA SMITH GIBBONS, Circuit Judge.** In March 2006, defendant-appellant Robert Darway pled guilty to one count of receipt and distribution of child pornography, in violation of 18 U.S.C. § 2252A(a)(2). The district court sentenced Darway to 108 months imprisonment, varying downward from Darway's Sentencing Guidelines range of 151 to 188 months imprisonment. On appeal, Darway contends that (1) the district court erred in concluding that he distributed images, and (2) his sentence of 108 months is unreasonable and exceeds the minimum necessary to comply with the purposes set forth in 18 U.S.C. § 3553(a). For the following reasons, we affirm the district court's sentence.

1

I.

In January 2005, a special agent of the Federal Bureau of Investigation began an investigation using the peer-to-peer computer program LimeWire, which enabled the agent to search the computers of other users of the same network. The agent searched using the keyword "xxxpthc-family fun," which revealed multiple related files from the internet protocol (IP) address 69.173.201.1 available to be viewed and downloaded by other network users. Of the 176 available files, many contained names commonly associated with child pornography. On January 27, 2005, the agent downloaded two files from IP address 69.173.201.1 using the LimeWire program; both files contained pre-pubescent males conducting sexual acts with adults. With the assistance of the internet provider, the agent found the IP address in question was assigned to "David Darway" and was located at 5918 Denison Avenue, Cleveland, Ohio. Further investigation revealed that defendant-appellant Robert Darway resided at that address.[1]

A search warrant was obtained and executed at Darway's residence on May 6, 2005. Darway was at home at the time of the search and told agents that he had resided there for two years and was the sole user of the computer located in his bedroom. Darway told the agents that he had downloaded child pornography video files and had searched the network using the term "underage." Agents obtained approximately 892 video tapes depicting pornographic acts from Darway's residence, roughly 100 of which contained child pornography. Darway also had 10 videos of children engaged in sexually explicit conduct saved on his computer. Additionally, agents recovered

---

[1]Darway told agents that at one point he had not paid his internet bill to his provider, Adelphia Communications, but subsequently re-opened his account in the name of David Darway, his long-deceased brother.

a separate disc containing a "large number" of images involving child pornography from Darway's residence.

Darway was indicted by a grand jury on May 25, 2005, and charged with one count of receipt and distribution of child pornography in violation of 18 U.S.C. § 2252A(a)(2). Darway entered a guilty plea on March 14, 2006, and the United States Probation Office subsequently prepared a presentence investigation report (PSR). In calculating Darway's Sentencing Guidelines range, the Probation Office found the following applicable: a base offense level of 22, pursuant to U.S.S.G. § 2G2.2(a)(2); a two-level enhancement because some of the material involved a prepubescent minor who had not obtained the age of 12 years, pursuant to § 2G2.2(b)(2); a two-level enhancement because the offense involved the use of a computer for possession or transmission, pursuant to § 2G2.2(b)(6); a four-level enhancement because some of the material portrayed sadistic or masochistic conduct, pursuant to § 2G2.2(b)(4); a five-level enhancement because the offense involved 600 or more images, pursuant to § 2G2.2(b)(7); and a two-level enhancement because the offense involved distribution of material involving the exploitation of a minor, pursuant to § 2G2.2(b)(3)(F). A three-level deduction for acceptance of responsibility reduced Darway's total offense level from 37 to 34. Combined with a criminal history score of zero, Darway's offense level yielded a suggested Guidelines range of 151 to 188 months imprisonment. The applicable statutory provision set Darway's minimum term of imprisonment at 5 years and his maximum term at 20 years. 18 U.S.C. § 2252A(b)(1).

Darway filed a Sentencing Memorandum in which he objected to the sentencing enhancements proposed in the PSR. At his sentencing hearing, Darway withdrew his objections to the individual sentencing enhancements, with the exception of the two-level enhancement for

3

distribution of child pornography. The district court considered and overruled this renewed objection. After addressing the relevant factors under 18 U.S.C. § 3553(a), the court sentenced Darway to 108 months imprisonment. Darway filed a timely notice of appeal.

## II.

Darway contends that because he did not actively send images to others the district court erred in applying a two-level enhancement for distribution of material involving the exploitation of a minor, pursuant to U.S.S.G. § 2G2.2(b)(3)(F).[2] Darway asserts that there is a legal distinction between merely making material available to others and affirmatively distributing such material. Darway claims that he did only the former, which does not constitute "distribution" for purposes of the § 2G2.2(b)(3)(F) enhancement. We review *de novo* the district court's legal conclusions regarding the Guidelines. *United States v. Hochschild*, 442 F.3d 974, 977 (6th Cir. 2006).

Darway's argument is without merit. As an initial matter, the indictment to which Darway pled guilty states: "ROBERT DARWAY did knowingly receive and *distribute* child pornography."[3] (emphasis added). To counter this, Darway contends that his actions cannot be interpreted as distribution under the dictionary definition of "distribute," which he asserts "includes an element of affirmative delivery on the part of the distributor."[4] However, as Darway concedes, this court turns

[2]Darway notes that, because he otherwise would have been eligible for a two-level reduction pursuant to § 2G2.2(b)(1), the court's application of the two-level enhancement under § 2G2.2(b)(3)(F) ultimately resulted in a four-level increase in his total offense level.

[3]Darway's maintenance of certain files on compact disc while maintaining other material on the publicly accessible LimeWire server further indicates that he intended to distribute certain material.

[4]Darway contends that the "most relevant" dictionary definition of "distribute" for purposes of § 2G2.2 is one related to the distribution of newspapers. We find this analogy inapposite. Unlike a physical newspaper that requires active delivery for distribution, file sharing software like

to dictionary definitions only when the plain meaning of a term is not defined in the text at issue or is otherwise unclear. *See Appoloni v. United States*, 450 F.3d 185, 199 (6th Cir. 2006) ("Where . . . no statutory definitions exist, a court may refer to dictionary definitions for guidance in discerning the plain meaning of a statute's language."). Here, the Guidelines commentary defines "distribution" as:

> any act, including possession with intent to distribute, production, advertisement, and transportation, related to the transfer of material involving the sexual exploitation of a minor. Accordingly, distribution includes posting material involving the sexual exploitation of a minor on a website for public viewing but does not include the mere solicitation of such material by a defendant.

U.S.S.G. § 2G2.2, cmt. n.1 (2006). Darway's posting of material on the LimeWire server for public viewing constitutes "distribution" under the plain meaning of this definition.

Darway also relies on the treatment of the term "distribute" in unrelated statutes, among them the Federal Insecticide, Fungicide, and Rodenticide Act and 21 U.S.C. § 856. Darway's argument regarding these statutes is weak: he notes only that Congress distinguishes between distribution and "merely making available" in areas wholly unrelated to the distribution of child pornography. If anything, these examples only emphasize the Sentencing Commission's intention to cast a wide net with its singular definition of "distribution" in § 2G2.2.

Several courts have held that maintaining files in an accessible public folder constitutes distribution. *See, e.g.*, *United States v. Carani*, 492 F.3d 867, 876 (7th Cir. 2007) (holding that making child pornography available for others to access and download through a peer-to-peer file sharing program qualifies as "distribution"); *United States v. Shaffer*, 472 F.3d 1219, 1223 (10th Cir.

LimeWire is designed with the express purpose of passive distribution. Our review of the definition of "distribute" in various dictionaries does not reveal any consistent requirement of affirmative delivery.

5

2007) (noting that because the defendant maintained an open file, the court had "little difficulty in concluding that [the defendant] distributed child pornography in the sense of having 'delivered,' 'transferred,' 'dispersed,' or 'dispensed' it to others."); *United States v. Todd*, 100 F. App'x 248, 250 (5th Cir. 2004), *vacated on other grounds*, 543 U.S. 1108 ("The LimeWire program was designed to share or barter files. . . . By downloading the images and making them accessible to others, [the defendant's] conduct met the definition of 'trafficking' in section 2G2.2."); *United States v. Postel*, No. 05-CR-103-LRR, 2006 WL 2513022, at *4 (N.D. Iowa Aug. 29, 2006) ("By placing child pornography in his shared folder and by running LimeWire, Defendant intended to barter his images of child pornography in the expectation that he would receive other LimeWire users' images of child pornography."). Darway cites only one case, *United States v. Wachowiak*, in which a court purportedly distinguished between making images available and distribution. 412 F. Supp. 2d 958, 960 (E.D. Wis. 2006). In *Wachowiak*, however, the court did not directly address whether the enhancement for distribution under § 2G2.2(b)(3)(F) was applicable. *Id.* Instead, the court discussed the defendant's relative culpability with regard to the reasonableness of his sentence under 18 U.S.C. § 3553(a). *Id.* at 962-64.

Because Darway's conduct constitutes distribution, we find the district court properly imposed the two-level enhancement under § 2G2.2(b)(3)(F).

III.

Darway next contends that his 108-month sentence was unreasonable because it exceeds what is necessary to satisfy the purposes of 18 U.S.C. § 3553(a). Following the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), the long-mandatory Sentencing Guidelines regime is now an advisory scheme. *United States v. Cage*, 458 F.3d 537, 540 (6th Cir. 2006). Under

6

*Booker*, the Guidelines are only one of a variety of factors set forth at 18 U.S.C. § 3553(a) that are now relevant to the district courts' task of imposing an appropriate sentence. *See Booker*, 543 U.S. at 259-60. Considering these factors, the sentencing court must provide "a sentence sufficient, but not greater than necessary to comply with the purposes set forth in [18 U.S.C. § 3553(a)(2)]." 18 U.S.C. § 3553(a).

Post-*Booker*, appellate courts review a district court's sentencing decision for reasonableness. *Rita v. United States*, 127 S. Ct. 2456, 2459 (2007); *United States v. Jackson*, 408 F.3d 301, 304 (6th Cir. 2005). In the Sixth Circuit, any sentence imposed must pass the dual tests of procedural and substantive reasonableness. *See United States v. Davis*, 458 F.3d 491, 495 (6th Cir. 2006). Darway contends only that his sentence is substantively unreasonable.[5] This court's review for substantive reasonableness consists of an inquiry into whether the sentence is reasonable in light of the § 3553(a) factors. *See Davis*, 458 F.3d at 496. In sentencing Darway to 108 months imprisonment, the district court varied downward 43 months from the low end of the Guidelines range. The court arrived at this sentence following a careful application of the factors outlined in § 3553(a) to Darway's case. The court first addressed the need to afford adequate deterrence, as required by § 3553(a)(2)(B), noting that a nine-year sentence would ensure that "anybody in their right mind would . . . be deterred from this kind of conduct." The court also found that twelve years of court supervision—nine years of imprisonment and three years of supervised release—was necessary to

---

[5]Darway does not expressly distinguish between procedural and substantive reasonableness, but he argues solely that his sentence exceeds what is necessary to satisfy the purposes of § 3553(a). With the exception of his argument regarding the two-level enhancement under § 2G2.2, Darway does not contend that the district court erred in calculating his Guidelines range or failed to consider any of the statutory factors outlined in § 3553. *See Davis*, 458 F.3d at 495. Accordingly, his argument is best characterized as one of substantive unreasonableness.

protect the public. After observing Darway in court, the court also found Darway in need of substance abuse treatment and mental health counseling, both of which required a significant period of time to address. The court further emphasized the need for the sentence to reflect the seriousness of the crime, as required by § 3553(a)(2)(A), noting that "the conduct [was] absolutely tasteless and sickening."

Darway offers no persuasive reason why he should receive a lesser sentence.[6] Instead, he argues that he did not engage in "more serious and harmful behaviors" such as producing child pornography or actually engaging in sexual conduct with minors. Such conduct, however, would have resulted in wholly different charges and, as a result, an entirely different (and higher) Guidelines range. Darway also contends that a lesser sentence would have been more appropriate for a first-time offender such as himself, but the court in fact relied heavily on this factor in imposing a downward variance. Indeed, in light of the substantial downward variance, the court devoted the bulk of its time to justifying this variance, not addressing why it did not vary downward even further.

When the district court adequately explains why it imposed a particular sentence, this court "[does] not further require that it exhaustively explain the obverse—*why* the alternative was *not* selected—in every instance." *United States v. Gale*, 468 F.3d 929, 940 (6th Cir. 2006). Here, the district court more than adequately explained the reasons for the sentence it imposed. "The fact that

---

[6]Darway asserts that *Wachowiak* is factually similar and counsels for a lower sentence in his case. In *Wachowiak*, the court sentenced the defendant to 70 months imprisonment, although his Guidelines range was 121 to 151 months. 412 F. Supp. 2d at 962-65. However, unlike Darway, Wachowiak did not receive a two-level enhancement for distribution. Further, the *Wachowiak* court noted several factors counseling in favor of a particularly low sentence, including: Wachowiak had a low risk of recidivism; his employers thought highly of him; he was an honor student; he had made previous efforts to destroy his illicit material; he was genuinely remorseful; and he made "sincere efforts" to obtain treatment. *Id.* These factors are not present in Darway's case.

the district court did not give the defendant the exact sentence he sought is not a cognizable basis to appeal, particularly where the district court followed the mandate of § 3553(a) in all relevant respects." *United States v. Jackson*, 466 F.3d 537, 540 (6th Cir. 2006). We therefore find that the sentence imposed by the district court is reasonable.

IV.

For the foregoing reasons, we affirm the district court's sentence.