# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-1148

_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Appellee, | * |
| | *   Appeal from the United States |
| v. | *   District Court for the |
| | *   Eastern District of Missouri. |
| Keisha Braggs, | * |
| | * |
| Appellant. | * |

_____

Submitted: November 13, 2007
Filed: January 7, 2008

_____

Before MELLOY, BEAM, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Keisha Braggs pled guilty to fraudulent use of an unauthorized access device, which carries a maximum term of 10 years of imprisonment. 18 U.S.C. § 1029(a)(2). Although the Sentencing Guidelines recommended a sentence of 15 to 21 months, the district court[1] imposed a sentence of 48 months. Braggs challenges her sentence as unreasonable. Guided by the Supreme Court's decision in <u>Gall v. United States</u>, 552 U.S. ___, No. 06-7949 (Dec. 10, 2007), we affirm.

---

[1] The Honorable Carol E. Jackson, Chief Judge, United States District Court for the Eastern District of Missouri.

I.

In February of 2005, a staffing resource company placed Keisha Braggs as a temporary employee with Sigma-Aldrich Corporation in St. Charles, Missouri. One of Braggs's duties was to update an automobile insurance spreadsheet that contained the names, addresses, and social security numbers of Sigma-Aldrich's nationwide sales representatives. Braggs used this information to submit several online credit card applications, opening unauthorized accounts using the Sigma-Aldrich corporate headquarters as the billing address.

Braggs attempted to charge between $2,000 and $3,000 to a number of retail establishments in the area of Fairview Heights, Illinois, including Target and McDonald's. Concerned that the charges might be fraudulent, American Express contacted officials from Sigma-Aldrich. The United States Postal Inspection Service and the Federal Bureau of Investigation conducted an investigation, which led them to Keisha Braggs. By the time she was arrested in January 2006, Braggs had made $1,987.87 in fraudulent retail purchases. Within three weeks of her arrest, Braggs agreed to plead guilty to one count of fraudulent use of an unauthorized access device[2] in violation of 18 U.S.C. § 1029(a)(2).

The presentence investigation report revealed that over the course of six years, Braggs had been convicted of four offenses related to theft and fraud. In January of 1995, she accessed a computer to obtain $195.49 worth of credit in a scheme to defraud the Simply Fashions Stores in Belleville, Illinois. She was sentenced to 12 months of probation and ordered to pay restitution and fines. Only three weeks after the first sentence was imposed, Braggs stole more than $300 worth of merchandise from the Famous Barr store in Fairview Heights, Illinois. Her probation was extended

---

[2] The statute defines "access device" to include an account number or personal identification number that can be used to obtain money, goods, services, or any other thing of value. 18 U.S.C. § 1029(e)(1).

for two more years, and she was ordered to participate in an intensive probation supervision program.

Two years later, Braggs used her position as a retail sales clerk at a Neiman Marcus store to assist a friend in obtaining merchandise from the store without paying. Braggs was sentenced to seven years of imprisonment, but the sentence was suspended and she was placed on five years of probation. By 2000, Braggs had again obtained employment in the retail business, this time at a Victoria's Secret store in St. Ann, Missouri. The store's loss prevention officers observed that Braggs had engaged in a scheme to ring up fraudulent returns and transfer the money to credit cards belonging to herself or her boyfriend. Overall, Braggs stole $3,200 in cash and credit before she was caught in July 2000. She was convicted of stealing over $750 and sentenced to seven years of imprisonment. Nevertheless, the execution of the sentence was again suspended and probation continued. As a condition of the supervised release, Braggs was ordered to complete 120 days of "shock incarceration."

On April 14, 2006, Braggs appeared before the district court for a sentencing hearing. The district court found that Braggs's criminal history category was IV and her offense level was 12, including a two-level increase for an abuse of a position of trust. As the district court noted, the Sentencing Guidelines called for a range of 21 to 27 months, and the maximum statutory penalty was ten years. After explaining that the Guidelines are advisory, the district court remarked that the state courts had been lenient to Braggs in the past, yet she continued to commit crimes of fraud and theft.

As the court discussed how much time Braggs had served for her past crimes, Braggs admitted that she had only been incarcerated for five months, even though the presentence report implied that she had served two years. The court expressed its opinion that Braggs's unlawful behavior may have persisted because she had not been incarcerated for a significant period of time. "I don't believe that your criminal

activity is going to stop with a sentence within the guidelines range," the court observed. The court then imposed a sentence of 48 months, which it concluded was reasonable under the circumstances to provide deterrence, punishment, and protection of the public.

Braggs appealed her sentence, and we reversed because the district court incorrectly applied the two-level enhancement for abuse of a position of trust. See United States v. Braggs, No. 06-2149, 196 Fed. Appx. 442, 444-45 (8th Cir. 2006) (per curiam) (unpublished). We held that it was an ex post facto violation to apply the enhancement because it was contained in an edition of the Sentencing Guidelines that went into effect after she committed her offense. Id. at 445. Braggs's case was remanded to the district court for resentencing under the 2004 edition of the Guidelines. Id.

At the resentencing hearing, the district court determined that the Sentencing Guidelines range, without the enhancement, was 15 to 21 months. From there, the court reviewed its reasons for imposing a 48-month sentence at the first sentencing hearing:

> So as I said before, it's the persistence of Miss Braggs' behavior that led me to believe that a sentence within the earlier guideline range of 21 to 27 months was not a reasonable sentence. I did not believe at that time that the sentencing objectives of punishment and deterrence and the protection of the public from further crimes by the defendant would be met by a sentence within the guideline range. Today, the guideline range is lower. I still don't have anything before me that leads me to a different conclusion than the one I had before, which is that a sentence within the guideline range is not reasonable.
>
> It wasn't reasonable when it was higher. It's certainly not reasonable now that it's lower and for the same reasons that I expressed at the earlier sentencing hearing. . . . And I continue to believe that a sentence

of 48 months' imprisonment, which represents not a departure but a variance from the guideline range, is a reasonable sentence.

(Resent. Hr'g Tr. 7:12-8:6, Dec. 8, 2006.) Braggs once again appeals, arguing that the 48-month sentence was an unreasonable upward variance from the Sentencing Guidelines.

## II.

Since its decision in United States v. Booker, 543 U.S. 220 (2005), the Supreme Court has outlined the proper format for a sentencing proceeding in a district court. Gall v. United States, 552 U.S. ___, No. 06-7949, slip op. at 11-12 (Dec. 10, 2007). The district court should begin with a correct calculation of the advisory Sentencing Guidelines range. Id. at 11. Then, after giving both parties a chance to argue for the sentence they deem appropriate, the court should consider all of the factors listed in 18 U.S.C. § 3553(a) to determine whether they support the sentence requested by either party. Id. The district court may not assume that the Guidelines range is reasonable, but instead "must make an individualized assessment based on the facts presented." Id. at 11-12. If the court determines that a sentence outside of the Guidelines is called for, it "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." Id. at 12. The sentence chosen should be adequately explained so as "to allow for meaningful appellate review and to promote the perception of fair sentencing." Id.

On appeal, we will review a sentence for an abuse of discretion, giving due deference to the district court's decision. Gall, slip op. at 12; Rita v. United States, 127 S. Ct. 2456, 2465 (2007). First, we will ensure that the district court did not commit a significant procedural error, such as miscalculating the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain

why a sentence was chosen. <u>Gall</u>, slip op. at 12. If the district court's decision is procedurally sound, then we will consider the substantive reasonableness of the sentence imposed, applying an abuse-of-discretion standard. <u>Id.</u> We may not presume that a sentence outside of the Guidelines is unreasonable. <u>Id.</u> Reversal is not justified on grounds that we could reasonably conclude that a different sentence was appropriate. <u>Id.</u> at 13. This deferential standard recognizes the institutional advantage of district courts in making sentencing determinations. <u>Id.</u>

Braggs does not challenge the procedures used by the district court, but asserts that the court erred by failing to provide adequate justification for the upward variance because the circumstances relied upon were not sufficiently unusual in kind or degree. In support of this argument, she cites the proposition that, "[a]n extraordinary reduction must be supported by extraordinary circumstances." <u>E.g.</u>, <u>United States v. Dalton</u>, 404 F.3d 1029, 1033 (8th Cir. 2005). Braggs calculates that her 48-month sentence was a 129% upward variance from the Guidelines range of 15 to 21 months.

One month after we heard Braggs's oral argument, the Supreme Court explicitly rejected "an appellate rule that requires 'extraordinary' circumstances to justify a sentence outside the Guidelines range." <u>Gall</u>, slip op. at 8. In addition, the Court rejected "the use of a rigid mathematical formula that uses the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence." <u>Id.</u> Now bound by <u>Gall</u>, our standard of review is more deferential than when we employed the "extraordinary circumstances" method.

The district court properly considered the factors in 18 U.S.C. § 3553(a) when it imposed Braggs's sentence, particularly the need to promote respect for the law, to provide just punishment, to afford adequate deterrence, and to protect the public from further crimes by the defendant. As the Sentencing Guidelines acknowledge, younger defendants who have repeatedly received lenient treatment can pose a greater risk of

serious recidivism than older defendants. United States Sentencing Commission, Guidelines Manual, §4A1.3, comment. (backg'd) (Nov. 2006). Under the circumstances of this case, we are not persuaded that the district court's sentencing decision was an abuse of discretion.

## III.

For the reasons stated above, we affirm the decision of the district court.

_____