**UNITED STATES of America,**
**Plaintiff,**

v.

**Sean MERRILL, Defendant.**

**No. 08–CR–06–LRR.**

United States District Court,
N.D. Iowa,
Cedar Rapids Division.

Sept. 27, 2008.

Sean R. Berry, U.S. Attorney's Office, Cedar Rapids, IA, for Plaintiff.

Mark R. Brown, Cedar Rapids, IA, for Defendant.

## ORDER

LINDA R. READE, Chief Judge.

### TABLE OF CONTENTS

I. *INTRODUCTION* ...................................................1146

II. *RELEVANT PROCEDURAL BACKGROUND* ..............................1146

III. *FACTUAL FINDINGS* ..............................................1146

A. Grooming ........................................... 1147
B. Sex ................................................ 1147
C. Photographs ....................................... 1147
D. Investigation ..................................... 1147
E. Search Warrants ................................... 1148

IV. SENTENCING FRAMEWORK ............................. 1148

V. ADVISORY SENTENCING GUIDELINES RANGE ............. 1149
A. Other Distribution—USSG § 2G2.2(b)(3)(F) ......... 1149
B. Cross–Reference to USSG § 2G2.1—USSG § 2G2.2(c)(1) ... 1153
C. Remaining Adjustments ............................ 1153

VI. DISPOSITION ...................................... 1154

## I. INTRODUCTION

The matter before the court is the sentencing of Defendant Sean Merrill.

## II. RELEVANT PROCEDURAL BACKGROUND

On February 27, 2008, the grand jury returned a two-count Superseding Indictment (docket no. 10) against Defendant. Count 1 charged Defendant with Possession of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) & (b)(2).[1] Count 2 charged Defendant with Receipt of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(2)(A) & (b)(1).[2]

On March 18, 2008, Defendant appeared before United States Magistrate Judge Jon S. Scoles and pled guilty to Count 2. Defendant pled guilty pursuant to a Plea Agreement (docket no. 21–2), in which the government agreed to dismiss Count 1 at the time of sentencing. On April 2, 2008, 2008 WL 912905, the undersigned accepted Defendant's guilty plea.

On August 26, 2008, the United States Probation Office ("USPO") filed the Amended and Final Copy of Defendant's Presentence Investigation Report ("PSIR"). On September 7, 2008, Defendant filed his Sentencing Memorandum (docket no. 27). On September 11, 2008, the government filed its Sentencing Memorandum (docket no. 30).

On September 25, 2008, the court held a contested sentencing hearing ("Hearing"). Assistant United States Attorney Sean R. Berry represented the government. Attorney Mark R. Brown represented Defendant.

At the conclusion of the Hearing, the court sentenced Defendant to 168 months of imprisonment. The instant Sentencing Memorandum explains how the court resolved the primary advisory Sentencing Guidelines issues in the case. It is not comprehensive and should be read in conjunction with the record of the Hearing.

## III. FACTUAL FINDINGS

The following facts are undisputed: [3]

---

1. It is a crime to "knowingly possess ... [any material] that contains an image of child pornography that has been ... transported in interstate ... commerce by any means, including by computer, or that was produced using materials that have been ... transported in interstate ... commerce by any means, including by computer[.]" 18 U.S.C. § 2252A(a)(5)(B). Such crime is punishable by not more than ten years in prison. *Id.* § 2252A(b)(2).

2. It is a crime to "knowingly receive ... any child pornography that has been ... transported in interstate ... commerce by any means, including by computer, or that was produced using materials that have been ... transported in interstate ... commerce by any means, including by computer[.]" 18 U.S.C. § 2252A(a)(2)(A). Such crime is ordinarily punishable by no less than five and up to twenty years in prison. *Id.* § 2252A(b)(1).

3. In the Plea Agreement, Defendant stipulated to a factual basis for Count 2. *See* Plea Agree-

## A. Grooming

In July of 2007, Defendant was a thirty-six-year-old man and B.G. was a fifteen-year-old girl. While B.G. was dating Defendant's minor stepson, Defendant began calling B.G. on his cellular telephone and sending her text messages and digital photographs of himself. Defendant eventually bought B.G. a cellular telephone, so he could secretly communicate with her. Defendant gave the cellular telephone to B.G. and began paying the monthly bills for it.

In early- to mid-August of 2007, Defendant and B.G. met in Holy Cross Cemetery ("Cemetery") in Anamosa, Iowa. Defendant and B.G. sat in Defendant's red Chevrolet Malibu car ("the Malibu") and talked about softball and personal matters.

## B. Sex

On August 22, 2007, Defendant and B.G. returned to the Cemetery and had sexual intercourse inside the Malibu. On at least nine additional occasions over the course of the next two months, Defendant and B.G. met inside the Cemetery and had sexual intercourse inside the Malibu.

## C. Photographs

On October 16, 17 and 22, 2007, Defendant sent three photographs of his penis to B.G. Defendant sent the photographs from his cellular telephone to B.G.'s cellular telephone. Two of the photographs were close-up photographs of Defendant's penis. The third photograph displayed a hand that was holding Defendant's semen-covered penis.

Upon receiving these three photographs, B.G. sent fifteen photographs to Defendant. B.G. sent the photographs from her cellular telephone to Defendant's cellular telephone. These fifteen photographs were all close-up photographs of B.G.'s genitalia and naked pubic area. Defendant did not ask B.G. to send him the fifteen photographs but received and viewed them on his cellular telephone. On October 17 and 27, 2007, Defendant emailed these fifteen photographs from his cellular telephone to his personal computer at his home in Anamosa. The email traveled in interstate commerce.

Once, Defendant took a photograph of himself and B.G. having sexual intercourse.

## D. Investigation

On October 23, 2007, a confidential informant ("CI") contacted the Anamosa Police Department ("APD") and reported the CI saw pornographic photographs of Defendant on B.G.'s cellular phone. Further, the CI reported that B.G. told the CI: Defendant was B.G.'s forty-year-old boyfriend; B.G. had several sexual encounters with Defendant in the Malibu; and Defendant had bought B.G. a cellular phone and was paying the bills for it.

On October 30, 2007, law enforcement officers interviewed B.G. B.G. admitted that she had a relationship with Defendant in July of 2007 and that Defendant had purchased her cellular telephone and was paying the bills for it. B.G. also admitted that she had engaged in a sexual relationship with Defendant beginning on or about August 22, 2007 and continuing to on or about October 23, 2007. B.G. said that she had sex with Defendant about ten times in

ment at ¶ 18. Further, Defendant did not specifically challenge the USPO's factual allegations in the "Offense Conduct" portion of the PSIR. *See* PSIR at ¶¶ 13–21. To the extent Defendant objected to various paragraphs of the PSIR, he only challenged the USPO's legal conclusions. Accordingly, the court deems these factual allegations to be

admitted. *See, e.g., United States v. Razo-Guerra,* 534 F.3d 970, 975–76 (8th Cir.2008) (holding that the district court properly accepted the factual allegations in a PSIR as true, where the defendant did not object to the facts themselves but rather only objected to the USPO's recommendations based upon those facts).

the Malibu in the Cemetery. B.G. defined sex as when a man places his penis in a female's vagina. B.G. believed that Defendant loved her and she loved Defendant. B.G. reported that, in or about September of 2007, Defendant attempted to end the relationship but they later met and had sexual intercourse. According to B.G., Defendant told her that if anyone attempted to arrest him, he would kill himself.

Later on October 30, 2007, Defendant turned himself into the APD. Defendant waived his *Miranda* rights. Defendant admitted he had sexual intercourse with B.G. twice, and they had performed oral sex on each other. Defendant admitted he knew that B.G. was only fifteen-years old. He also admitted to purchasing and paying the bills for B.G.'s cellular telephone and to receiving pictures of B.G. therefrom. Defendant further stated that he had deleted pictures of his penis and a topless picture of B.G. from his cellular telephone. Finally, Defendant admitted that he had taken a photograph of B.G. while she was engaged in sexual intercourse with him.

### E. Search Warrants

On October 31, 2007, law enforcement officers executed a search warrant on Defendant's cellular telephone. The officers found fifteen photographs, the close-up shots of B.G.'s genitalia and naked pubic area. They also executed a search warrant at Defendant's home and seized his computer tower, including his hard drive. Further examination at a laboratory revealed (1) the hard drive contained nineteen images of B.G.'s genitalia and naked pubic area; (2) Defendant had engaged in an explicit chat session with B.G. on Yahoo! Instant Messaging; and (3) Defendant was using the following profile names: "smbig8fan," "Americanangel7662," "[B.G.]," "Californiakiddreaming," "pennyup70," and "spiceyndicey."

## IV. SENTENCING FRAMEWORK

A "district court should begin [a sentencing proceeding] with a correct calculation of the [defendant's] advisory Sentencing Guidelines range." *United States v. Braggs*, 511 F.3d 808, 812 (8th Cir.2008). The advisory Sentencing Guidelines range "is arrived at after determining the appropriate Guidelines range and evaluating whether any traditional Guidelines departures are warranted." *United States v. Washington*, 515 F.3d 861, 865 (8th Cir. 2008).

"[A]fter giving both parties a chance to argue for the sentence they deem appropriate, the court should consider all of the factors listed in 18 U.S.C. § 3553(a) to determine whether they support the sentence requested by either party." *Braggs*, 511 F.3d at 812. "The district court may not assume that the Guidelines range is reasonable, but instead 'must make an individualized assessment based on the facts presented.'" *Id.* (quoting *Gall v. United States*, —— U.S. ——, 128 S.Ct. 586, 597, 169 L.Ed.2d 445 (2007)). "If the court determines that a sentence outside of the Guidelines is called for, it 'must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.'" *Id.* "The sentence chosen should be adequately explained so as 'to allow for meaningful appellate review and to promote the perception of fair sentencing.'" *Id.*

In sentencing Defendant, the court made findings of fact by a preponderance of the evidence. "[J]udicial factfinding using a preponderance of the evidence standard is permitted provided that the [Sentencing Guidelines] are applied in an advisory manner." *United States v. Bah*, 439 F.3d 423, 426 n. 1 (8th Cir.2006). Generally, the government bore the burden of proof. *Compare United States v.*

*Flores,* 362 F.3d 1030, 1037 (8th Cir.2004) (stating that the government bears the burden to prove sentencing enhancements), *with United States v. Lussier,* 423 F.3d 838, 843 (8th Cir.2005) (holding that defendant had the burden of proving a reduction in his offense level under the advisory Sentencing Guidelines). The court considered a wide variety of evidence, including the undisputed portions of the PSIR and the stipulated facts in the Plea Agreement. When relevant and "accompanied by sufficient indicia of reliability to support the conclusion that it [was] probably accurate," the court credited hearsay. *United States v. Sharpfish,* 408 F.3d 507, 511 (8th Cir.2005).

The court did not "put on blinders" and only consider the evidence directly underlying Defendant's offense of conviction. In calculating Defendant's advisory Sentencing Guidelines range, for example, the court applied the familiar doctrine of relevant conduct. *See* USSG § 1B1.3 (2007).[4] The Eighth Circuit Court of Appeals has repeatedly held that a district court may consider uncharged, dismissed and even acquitted conduct at sentencing. *See, e.g., United States v. Whiting,* 522 F.3d 845, 850 (8th Cir.2008) ("The sentencing court is not prohibited from considering uncharged or acquitted conduct."); *United States v. Bradford,* 499 F.3d 910, 922 (8th Cir.2007), *cert. denied,* — U.S. ——, 128 S.Ct. 1446, 170 L.Ed.2d 278 (2008) (upholding upward departure based on relevant conduct that formed the basis for a dismissed indictment).

## V. ADVISORY SENTENCING GUIDELINES RANGE

The parties agreed that the applicable sentencing guideline for Defendant's violation of 18 U.S.C. § 2252A(a)(2)(A) & (b)(1)

was § 2G2.2. *See* USSG App. A (Statutory Index). The parties also agreed that Defendant's base offense level was **22**. *See* USSG § 2G2.2(a)(2) (setting the defendant's base offense level at **22** if the defendant was not convicted of 18 U.S.C. §§ 1466A(b), 2252(a)(4) or 2252A(a)(5)). Further, the parties agreed that Defendant was subject to (1) a **five-level** increase, pursuant to USSG § 2G2.2(b)(5), because he engaged in a pattern of activity involving the sexual abuse or exploitation of a minor; (2) a **two-level** increase, pursuant to USSG § 2G2.2(b)(6), because he used a computer to possess or transmit child pornography; and (3) a **two-level** increase, pursuant to USSG § 2G2.2(b)(7)(A), because his offense involved at least ten images of child pornography. Thus, it was stipulated that Defendant's adjusted offense level was at least **31**.

The parties litigated two primary issues. The issues were: (1) whether Defendant should receive a two-level increase, pursuant to USSG § 2G2.2(b)(3)(F), because he distributed child pornography; and (2) whether to apply the cross-reference found at USSG § 2G2.2(c)(1) to USSG § 2G2.1.

### A. "Other Distribution"— USSG § 2G2.2(b)(3)(F)

▮ The first issue was whether Defendant should receive a two-level increase, pursuant to USSG § 2G2.2(b)(3)(F), because he distributed child pornography. In full, § 2G2.2(b)(3) provides:

(3) (Apply the greatest) If the offense involved:

(A) Distribution for pecuniary gain, increase by the number of levels from the table in § 2B1.1 (Theft, Property Destruction, and Fraud)

---

4. The parties agreed that the 2007 version of the Federal Sentencing Guidelines Manual

applies.

corresponding to the retail value of the material, but by not less than **5** levels.

(B) Distribution for the receipt, or expectation of receipt, of a thing of value, but not for pecuniary gain, increase by **5** levels.

(C) Distribution to a minor, increase by **5** levels.

(D) Distribution to a minor that was intended to persuade, induce, entice, or coerce the minor to engage in any illegal activity, other than illegal activity covered under subdivision (E), increase by **6** levels.

(E) Distribution to a minor that was intended to persuade, induce, entice, coerce, or facilitate the travel of, the minor to engage in prohibited sexual conduct, increase by **7** levels.

(F) Distribution other than distribution described in subdivisions (A) through (E), increase by **2** levels.

USSG § 2G2.2(b)(3) (emphasis in original). For purposes of § 2G2.2(b)(3), " '[d]istribution' means any act, including possession with intent to distribute, production, advertisement, and transportation, related to the transfer of material involving the sexual exploitation of a minor." *Id.* § 2G2.2, cmt. (n.1). "[D]istribution includes posting material involving the sexual exploitation of a minor on a website for public viewing but does not include the mere solicitation of such material by a defendant." *Id.*

The government conceded Defendant's offense did not qualify for an enhancement under USSG § 2G2.2(b)(3)(A)-(E). Rather, the government argued that Defendant "distributed" child pornography, as contemplated in USSG § 2G2.2(b)(3)(F), when he emailed the fifteen photographs of B.G. from his cellular telephone to his home computer. The government contended that such act fell within the plain language of the definition of "distribution," because Defendant's act of emailing the photographs was "any act . . . related to the transfer of material involving the sexual exploitation of a minor." *Id.* § 2G2.2, cmt. (n. 1). The government opined that, by emailing the child pornography to himself, "defendant created additional copies [sic] the illegal images and made those images available to employees of defendant's Internet Service Provider" ("ISP"). Sentencing Memorandum (docket no. 30), at 2–3. Defendant rejoined that merely moving child pornography from his cellular telephone to his personal computer solely for the purpose of his own viewing of the child pornography was not "distribution." Defendant argued that one cannot "distribute" child pornography to oneself.

The court declined to apply a two-level increase, pursuant to USSG § 2G2.2(b)(3)(F). Defendant received, possessed and even produced child pornography. However, Defendant did not *distribute* child pornography when he emailed some of his child pornography from his cellular phone to his home computer. In applying § 2G2.2, "[t]he term 'distribution' should be given its ordinary meaning of 'to dispense' or 'to give out or deliver.' " *United States v. Probel,* 214 F.3d 1285, 1289 (11th Cir.2000) (citing Webster's Third New International Dictionary 660 (1981)). Defendant did not dispense, give out or deliver child pornography.

For example, there is no evidence Defendant emailed the fifteen photographs of B.G. to another person or stored them in such a way on his computer that other persons could view them. Defendant did not distribute the photographs to his Internet Service Provider; the ISP only provided a conduit for the move. Defendant no more distributed the photographs to his ISP than he distributed them to the cellular telephone company.

To the contrary, Defendant's threat of suicide shows that he wanted to keep his sexual relationship with B.G. hidden from other persons and did not desire to participate in the larger marketplace for child pornography. In emailing the photographs of B.G. from his cellular telephone to his personal computer, Defendant in effect copied the photographs from one electronic device to another. Defendant sent the email to enhance his use of the child pornography, not to distribute it to others. Photographs are better viewed on the monitor of a personal computer than on a tiny cell phone screen.

Notably, the government does not cite *any* cases in which a court has upheld a sentencing enhancement for distribution under analogous circumstances. It appears that, in every reported case sustaining the use of an enhancement for distribution of child pornography, the defendant committed some act relating to the transfer or attempted transfer of child pornography *to another person. See, e.g., United States v. Carani,* 492 F.3d 867, 875–76 (7th Cir.2007) (defendant knowingly placed child pornography in a shared drive on his computer so that another person could view it through a peer-to-peer file sharing program), *cert. denied,* —— U.S. ——, 128 S.Ct. 932, 169 L.Ed.2d 769 (2008); *United States v. Darway,* 255 Fed.Appx. 68, 70–72 (6th Cir.2007) (same); *United States v. Hecht,* 470 F.3d 177, 182–83 (4th Cir.2006) (defendant displayed child pornography on his computer monitor and pointed a webcam at the child pornography, so that another person could view the child pornography through the webcam); *United States v. Clawson,* 408 F.3d 556, 558 (8th Cir.2005) (defendant made child pornography available to a minor by putting it in a closet in the minor's house); *United States v. Probel,* 214 F.3d 1285, 1288–91 (11th Cir.2000) (defendant sent child pornography to another person over the Internet); *United States v. Stanton,* 973 F.2d 608,

610 (8th Cir.1992) (defendant sold magazines containing child pornography to another person for profit); *United States v. Postel,* 524 F.Supp.2d 1120, 1124–25 (N.D.Iowa 2006) (defendant used file-sharing software on his computer so that others could access it). There is simply no precedent for applying § 2G2.2(b)(3) as broadly as the government advocates in the case at bar.

The court recognizes that the Commentary to § 2G2.2 defines "distribution" relatively expansively as "any act ... related to the transfer of material involving the sexual exploitation of a minor." USSG § 2G2.2, cmt. (n. 1); *see, e.g., Hecht,* 470 F.3d at 182–83 ("The term 'any' at the outset of the first sentence of the definition of 'distribution' in Application Note 1 'is a term of great breadth.' "). The Commentary broadens the scope of "distribution" to apply not only to those defendants who directly distribute child pornography to other persons, but also to those "individuals who are indirectly involved in distribution ... such as producers and transporters...." *Probel,* 214 F.3d at 1288. Although Defendant copied his stash of child pornography from one electronic device to another, he was not involved—even indirectly—in the distribution of child pornography to another person. In the phraseology of Application Note 1, Defendant's act of emailing the photographs to his personal computer from his cellular telephone was not a "transfer" of such photographs. The Commentary to § 2G2.2 does not define the term "transfer." The common sense meaning of "transfer," like "distribute," implies some sort of dispensing, giving out or delivering to another person or persons. *See United States v. Oslund,* 453 F.3d 1048, 1062 (8th Cir.2006) (stating that, where Congress does not define a word, "the common sense meaning of the word is used and considered binding, absent congressional

intent to the contrary"); *cf. Probel,* 214 F.3d at 1289 ("The term 'distribution' should be given its ordinary meaning of 'to dispense' or 'to give out or deliver.'") (Citation omitted.). "Transfer" is distinguishable from "transport," "translate," "move" or "copy."

The enhancement in § 2G2.2(b)(3)(F) would clearly apply had Defendant emailed the photographs from his cellular phone to his computer in such a manner that other persons could then view the photographs. For example, the enhancement would apply if the defendant had moved the photographs to a shared directory and equipped his computer with peer-to-peer file-sharing software. *Cf. Carani,* 492 F.3d at 875–76; *Darway,* 255 Fed.Appx. at 70–72; *Postel,* 524 F.Supp.2d at 1124–25. The Tenth Circuit Court of Appeals recently likened distribution over a file-sharing network to the operation of a self-serve gas station:

> The owner may not be present at the station, and there may be no attendant present at all. And neither the owner nor his or her agents may ever pump gas. But the owner has a roadside sign letting all passerby know that, if they choose, they can stop and fill their cars for themselves, paying at the pump by credit card.

*United States v. Shaffer,* 472 F.3d 1219, 1223–24 (10th Cir.2007) (quoted in *Carani,* 492 F.3d at 876). In the case at bar, however, Defendant did not take any actions to make his stash of child pornography available to others or to advertise it to them. Using the Tenth Circuit Court of Appeals's analogy, Defendant did not put up a sign on the roadway.

■ To be certain, § 2G2.2(b)(3)(F) applies broadly to even those defendants who play small roles in the marketplace for child pornography. *Hecht,* 470 F.3d at 182–83. For example, a defendant who makes copies of child pornography or moves photographs containing child por-

nography for future distribution to others commits an "act ... relating to the transfer" of child pornography. Mere movement or copying of the pictures from one medium to another, however, does not trigger the enhancement when no transfer to another person is contemplated.

If the court were to accept the government's broad interpretation of "distribution," the court would contravene the stated intent of § 2G2.2(b)(3). The Eighth Circuit Court of Appeals has stated that "[t]he purpose of [§ 2G2.2(b)(3)] is to increase the sentence of those defendants who did not merely receive child pornography but also *disseminated* it." *United States v. Horn,* 187 F.3d 781, 791 (8th Cir.1999) (emphasis added). Similarly, the Eleventh Circuit Court of Appeals recently stated that § 2G2.2(b)(3) "addresses the harms attendant to the act of distributing and sharing child pornography *with other individuals.*" *United States v. Carter,* 292 Fed.Appx. 16, 19, 2008 WL 3929344, *2 (11th Cir. Aug. 27, 2008) (per curiam) (emphasis added). Defendant did not disseminate child pornography; he simply copied his stash of child pornography from one electronic device to another. Under the government's interpretation of "distribution," *anytime* a defendant copies or transports child pornography for his own personal use he "distributes" the child pornography because such copying or transportation effects a "transfer" of the child pornography. While Congress and the Sentencing Commission are certainly free to advise harsher sentences for those defendants who copy child pornography from one electronic device to another for their own personal use, there is simply no reason to believe that Congress or the Sentencing Commission had such intent. The court must apply the plain language of the Guideline and the Commentary thereto. *Oslund,* 453 F.3d at 1062.

Accordingly, the court declined to apply a two-level increase, pursuant to USSG § 2G2.2(b)(3)(F).

### B. Cross–Reference to USSG § 2G2.1— USSG § 2G2.2(c)(1)

] The second issue was whether the court should apply the cross-reference found at USSG § 2G2.2(c)(1) to USSG § 2G2.1.

Under the Guidelines "[i]f the offense involved causing . . . a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, apply § 2G2.1 . . . . [ [5] ] "The cross reference in subsection (c)(1) is to be construed broadly and includes all instances where the offense involved employing, using, persuading, inducing, enticing, coercing, transporting, permitting, or offering or seeking by notice or advertisement, a minor to engage in sexually explicit conduct for the purpose of producing any visual depiction of such conduct." U.S.S.G. § 2G2.2(c)(1) cmt. n. 5.

*United States v. Starr*, 533 F.3d 985, 1001 (8th Cir.2008) (citations omitted), *aff'g* 486 F.Supp.2d 940 (N.D.Iowa 2007). "The cross-reference merely implements the common sense notion that a receiver or possessor who has manufactured the pornography in his possession is both more culpable and more dangerous than the one who has received or possessed the pornography and no more." *United States v. Dawn*, 129 F.3d 878, 884 (7th Cir.1997); *Starr*, 486 F.Supp.2d at 945.

The court found that Defendant twice caused B.G. to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct. First, Defendant *induced* and *enticed* B.G. to produce and email the fifteen pornographic photographs of her genitalia and pubes to him. Specifically, Defendant emailed B.G. pornographic photographs of himself. This is a common tactic of child pornographers who want their victims to reciprocate. While Defendant did not explicitly ask B.G. to reciprocate, in emailing B.G. photographs of his penis he induced and enticed her to do so. Second, Defendant *used* B.G. to produce child pornography. Specifically, Defendant groomed B.G. and repeatedly had sexual intercourse with her for the purpose of producing a pornographic photograph of B.G. having sexual intercourse with him.

Accordingly, the court applied the cross-reference found at USSG § 2G2.2(c)(1) to USSG § 2G2.1. This brought Defendant's adjusted offense level to **32**. *See* USSG § 2G2.1(a) (setting base offense level at 32);

### C. Remaining Adjustments

The parties agreed that, if the cross-reference applied, Defendant was liable for a **two-level** adjustment, pursuant to USSG § 2G2.1(b)(1)(B), because his offense involved a fifteen-year old child. Further, the parties agreed Defendant was liable for an additional **two-level** adjustment, pursuant to USSG § 2G2.1(b)(2)(A), because his offense involved the commission of a sexual act. For the reasons stated in Part V.A. *supra*, the court held a two-level adjustment for distribution, pursuant to USSG § 2G2.1(b)(3), did not apply. Sections 2G2.1(b)(3) and 2G2.2(b)(3) are identical, and the analysis is the same. Finally, the parties agreed that Defendant was entitled to a **three-level decrease,** pursuant to USSG § 3E1.1, for acceptance of responsibility. Defendant's final adjusted total offense level was **33**. It was undis-

---

**5.** The cross-reference only applies if the resulting offense level in USSG § 2G2.1 would be greater than the resulting offense level in USSG § 2G2.2. USSG § 2G2.2(c)(1). It was not disputed that application of the cross-reference would result in a greater offense level.

1154

puted that Defendant was a **Criminal History Category I.** PSIR at ¶ 53. Accordingly, Defendant's advisory Sentencing Guidelines range was **135 to 168 months of imprisonment.**

### VI. DISPOSITION

After considering all of the factors at 18 U.S.C. § 3553(a), the court sentenced Defendant to 168 months of imprisonment, a sentence at the high end of Defendant's advisory Sentencing Guidelines range of 135 to 168 months of imprisonment.

**IT IS SO ORDERED.**