**UNITED STATES of America,**
**Plaintiff,**

v.

**Philip Allen SHIPLEY, Defendant.**

No. 4:07–cr–00081.

United States District Court,
S.D. Iowa,
Central Division.

June 19, 2008.

J. Keith Rigg, J. Keith Rigg Attorney at Law, Des Moines, IA, for Defendant.

Craig P. Gaumer, U.S. Attorney's Office, Des Moines, IA, for Plaintiff.

## SENTENCING MEMORANDUM OPINION AND ORDER

ROBERT W. PRATT, Chief Judge.

Before the Court is the matter of sentencing the Defendant, Philip Allen Ship-

ley. This memorandum opinion and order supplements the findings made on the record at the sentencing hearing held on June 19, 2008.

## I. FACTS

On June 22, 2007, the Defendant pleaded guilty to Count One of an Indictment charging him with receiving visual depictions of minors engaging in sexually explicit conduct from June 1, 2006 through October 13, 2006, in violation of 18 U.S.C. § 2252(a)(2). The Defendant was using the Google "Hello" file sharing program, a peer to peer picture sharing program, to chat about and trade images of child pornography. Immigration and Customs Enforcement (ICE) agents identified "Hello" user Nicholas Farmer as an individual trading child pornography, and determined that the Defendant had received child pornography from Farmer. During execution of a search warrant on his residence, the Defendant immediately admitted his involvement with child pornography, stated that he was shocked he had let himself get involved in it, and that his involvement with child pornography "snowballed" after receiving an invitation to trade pictures in a chat room, to the point that he was trading child pornography "almost daily." The Defendant led agents to six compact discs containing images he intended to trade and acknowledged also using Yahoo! to trade child pornography. He also indicated that he had several screen names because he would get upset with himself and delete the program, only to later reinstall it and return to trading.

## II. LAW

■ The Supreme Court held in *United States v. Booker* that the mandatory nature of the sentencing guidelines system violated the Sixth Amendment of the United States Constitution. 543 U.S. 220, 226–27, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). To remedy this, the Supreme Court modified the federal sentencing statute to make the sentencing guidelines truly guidelines—advisory, but not binding on the sentencing court. *Id.* at 245, 125 S.Ct. 738. Subsequent litigation has affirmed the authority of the sentencing court to sentence within the range of choice dictated by the facts and applicable law of the case before it. *See Gall v. United States,* —— U.S. ——, 128 S.Ct. 586, 602, 169 L.Ed.2d 445 (2007) (upholding a sentence outside the advisory guideline range as reasonable); *Kimbrough v. United States,* —— U.S. ——, 128 S.Ct. 558, 570, 169 L.Ed.2d 481 (2007) (noting that sentencing courts may vary from the advisory guideline range based solely on policy considerations, including disagreement with the policy underlying the guidelines in a case); *Rita v. United States,* —— U.S. ——, 127 S.Ct. 2456, 2465, 168 L.Ed.2d 203 (2007) (stating that a district court may consider arguments that "the Guidelines sentence itself fails to properly reflect [18 U.S.C.] § 3553(a) considerations"). The result of this development in sentencing law is that sentencing courts must "take account of" the advisory guideline range as part of all the sentencing goals and factors enumerated in 18 U.S.C. § 3553(a), but are no longer bound by the sentencing range indicated by the applicable guideline in the case. *Cunningham v. California,* 549 U.S. 270, ——, 127 S.Ct. 856, 867, 166 L.Ed.2d 856 (2007); *Booker,* 543 U.S. at 261, 125 S.Ct. 738.

■ The advisory guidelines are, therefore, "the starting point and the initial benchmark" in determining a sentence. *Gall,* 128 S.Ct. at 596 (stating that "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range"). While district courts must "give respectful consideration to the Guidelines," they are permitted " 'to tailor the sentence in light of

other statutory concerns as well.'" *Kimbrough,* 128 S.Ct. at 570 (quoting *Booker,* 543 U.S. at 245–46, 125 S.Ct. 738). "[T]he Guidelines are not the only consideration, [and] the district judge should consider all of the § 3553(a) factors" to fashion the appropriate sentence. *Gall,* 128 S.Ct. at 596. As required by the Sentencing Reform Act, the "overarching provision instruct[s][the] district courts to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing, including 'to reflect the seriousness of the offense,' 'to promote respect for the law,' 'to provide just punishment for the offense,' 'to afford adequate deterrence to criminal conduct,' and 'to protect the public from further crimes of the defendant.'" *Kimbrough,* 128 S.Ct. at 570 (quoting 18 U.S.C. § 3553(a)).

▇▇▇ In determining the sentence that is "sufficient, but not greater than necessary," the statute further directs the sentencing court to consider the nature and circumstances of the offense, the history and characteristics of the defendant, the sentencing range and any pertinent policy statement issued by the Sentencing Commission, the kinds of sentences available, the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, and the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a); *accord Kimbrough,* 128 S.Ct. at 570. The sentencing court "may not presume that the Guidelines range is reasonable," but rather must "make an individualized assessment based on the facts presented" to arrive at a sentence that is sufficient, but not greater than necessary, in a given case. *Gall,* 128 S.Ct. at 597. While the rationale for a non-guideline sentence will necessarily be

more detailed the further the deviation from the advisory guideline suggested by the Sentencing Commission, there is no legal requirement that "extraordinary circumstances" are a prerequisite to imposition of a non-guideline sentence. *Id.* The sentencing judge has a greater familiarity with an individual case than either the Sentencing Commission of the Court of Appeals, and is "therefore, 'in a superior position to find facts and judge their import under § 3553(a)' in each particular case." *Kimbrough,* 128 S.Ct. at 574 (quoting *Gall,* 128 S.Ct. at 597).

## III. ANALYSIS

### A. *Advisory Guideline Calculation*

▇▇▇ The Court finds that the Defendant's base offense level under the advisory sentencing guidelines is 22.[1] *See* U.S.S.G. § 2G2.2(a)(1). Because the material involves a minor under the age of twelve, two levels are added. *See* U.S.S.G. § 2G2.2(b)(2). Five levels are added because the offense involved distribution for the receipt, or expectation of receipt, of a thing of value, though not pecuniary gain. *See* U.S.S.G. § 2G2.2(b)(3)(B). Four levels are added because the material portrays sadistic, masochistic conduct or other depictions of violence. *See* U.S.S.G. § 2G2.2(b)(4). Two levels are added because the offense involved the use of a computer for the possession, transmission, receipt, or distribution of the material. *See* U.S.S.G. § 2G2.2(b)(6). Finally, five levels are added because the offense involved at least 600 images. *See* U.S.S.G. § 2G2.2(b)(7)(D). The Court finds that the two level adjustment for acceptance of responsibility is warranted in light of the Defendant's timely guilty plea, and the Government has moved for application of a

---

1. The Guidelines Manual effective November 1, 2007 was used to calculate the advisory guideline in the case. The Court notes that

the calculation under the 2008 Sentencing Guidelines would remain the same.

third point reduction for acceptance of responsibility as well. *See* U.S.S.G. § 3E1.1(a) & (b). The Defendant's total offense level is, therefore, 37. The Defendant has no prior criminal history of any sort, resulting in a criminal history category of I. The resulting advisory sentencing range of imprisonment is 210 to 240 months. The top of the range would be higher but for the statutory maximum sentence of 20 years. 18 U.S.C. § 2252(b)(1).

### B. *18 U.S.C. § 3553(a)*

The Court's duty is to impose a sentence that is "sufficient but not greater than necessary" after considering all the factors set forth in the sentencing statute, 18 U.S.C. § 3553(a). One of the factors is the need for the sentence imposed to reflect the seriousness of the offense. Child pornography offenses are very serious, as is amply shown by the victim impact statement on file with the United States Postal Inspectors from the mother of one of the children depicted in one of the images found on the Defendant's computer. The statement correctly notes that individuals trading such images create the market for the images that resulted in the exploitation and victimization of her daughter. The statement also discusses the severe psychological harm that the child endured, and how it manifests in her actions, appearance, and behaviors. As the Government notes in its sentencing memorandum, the market for such images helps foster conduct that is punishable by life in prison in many states for the crimes that are inflicted on children to create such images. Many child victims will never live a normal life.

The Court must also consider the nature and circumstances of the offense and the history and characteristics of the Defendant when determining the sentence that is sufficient, but not greater than necessary. The Defendant is 46 years old. His father was an alcoholic who was unable to maintain a job, and his parents divorced when he was a pre-teen. The Defendant's mother remarried a few years later, and she and the Defendant are close. When the Defendant was in second grade, he was sexually abused by a neighbor of his grandmother. He never reported the abuse at the time. The Defendant served in the military in active service from December of 1985 through July of 1995. He spent three years and one month in foreign service, and received the National Defense Service Medal, Meritorious Service Medal, and Army Commendation Medal. He was honorably discharged from the National Guard in November of 1999. He subsequently worked in the photography business, as a systems analyst and liaison, and business analyst. The Defendant is active in the community, working with Habitat for Humanity, coaching sports, and he did photography-related charity work when he owned a photography studio. The Defendant is married and has two teenage daughters.

After the search warrant was executed on his residence, the Defendant attempted suicide by ingesting large amounts of beer and Tylenol PM. He was found and revived, and was diagnosed with major depression. His depression appears to be under control at this time, though he remains on medications. He has also been receiving counseling for depression and sexual addiction since his suicide attempt.

The Court has received an abundance of letters regarding the character of the Defendant. The letters describe an intelligent, patient, and honorable man, always willing to help others when needed. Several of the letters offer employment, and even residence, for the Defendant upon his release from incarceration if he needs it. The letters note the shame the Defendant feels for his crime, and link his shame to the suicide attempt. Given the Defen-

dant's immediate cooperation with authorities and the information about his life and background provided in the presentence report and the letters, the Court concurs in this belief.

██ Congress has established a statutory sentencing range of 5 to 20 years, with 5 years being a mandatory minimum sentence and 20 years the statutory maximum for this offense. Thus, imprisonment is required in this case. The advisory guideline, which the Court must also consider under § 3553(a), reaches a total offense level of 37. The Defendant has no criminal history of any sort, and his advisory sentencing range is 210 to 240 months under the guidelines. As Chief Judge Bataillon noted in *United States v. Baird*, No. 8:07CR204, 2008 WL 151258, at *7 (D.Neb. Jan. 11, 2008), the guidelines for child exploitation offenses were not developed using an empirical approach by the Sentencing Commission, but rather were mainly promulgated in response to statutory directives. Specifically, the Protect Act directly amended guideline 2G2.2 by amending the guideline enhancements for specific offense characteristics. These modifications do not appear to be based on any sort of empirical data, and the Court has been unable to locate any particular rationale for them beyond the general revulsion that is associated with child exploitation-related offenses. *See* Skye Phillips, *Protect Downward Departures: Congress and Executive's Intrusion Into Judicial Independence*, 12 J.L. & Pol'y 947, 967–84 (2004) (discussing the history of the guideline modifications made in the Protect Act and the fact that the changes were made without notifying or consulting the Sentencing Commission); *see also United States v. Detwiler*, 338 F.Supp.2d 1166, 1170–71 (D.Or.2004) (discussing the Feeney Amendment to the Protect Act). Thus, because the guidelines at issue in this case do not reflect the unique institutional strengths of the Sentencing Com-

mission in that they are not based on study, empirical research, and data, like Chief Judge Bataillon, this Court "affords them less deference than it would to empirically-grounded guidelines." *See also Kimbrough*, 128 S.Ct. at 574 (noting that guideline ranges created where the Commission departed from past practices are a less reliable appraisal of a fair sentence). As to any argument that the guideline reflects Congressional intent to punish child sex offenses harshly, a guideline is not a statute. The statute here provides a broad range of punishment for this crime, and if Congress does not want the courts to try and sentence individual defendants throughout that range based on the facts and circumstances of each case, then Congress should amend the statute, rather than manipulate an advisory guideline and blunt the effectiveness and reliability of the work of the Sentencing Commission. While the Court has consulted the advice of the guidelines, the advice in this case is less reliable than in other cases where the guidelines are based on study and empirical data.

██ The Court, after considering all the factors in 18 U.S.C. § 3553(a), believes that a term of 90 months imprisonment and a $10,000 fine is a sentence that is sufficient but not greater than necessary in this case. As already discussed, the offense is very serious. The advisory guideline, however, is not a reliable indicator of the Sentencing Commission's perspective on a fair sentence. The Court further observes that the Defendant's history of honorable service to his country and community, through both his military and civilian works, is indicative that a sentence of much less than the guideline will be sufficient but not greater than necessary to meet the goals of sentencing, and the Court notes that the advisory guideline calculation does not factor this history into

the calculation. The Court must consider the need to afford adequate deterrence to criminal conduct, and given the Defendant's lack of any criminal history and the shame he already feels for the offense that manifested in a suicide attempt, this sentence is sufficient but not greater than necessary to provide specific deterrence to the Defendant. In regard to general deterrence, 90 months is a long time to spend in prison, and to the extent other offenders are paying any attention to this or any sentence imposed for this type of offense, 90 months should provide adequate deterrence to them—if they are capable of being deterred.

The Court will also impose five years of supervised release on the Defendant to be served after his incarceration, with stringent conditions,[2] and believes this supervision with conditions will help ensure, along with the prison sentence, that the public is protected from further crimes by the Defendant. The Court believes the Defendant is sincere in his shame and remorse for his offense, and does believe the Defendant is unlikely to re-offend if he continues to receive treatment. Supervision and continued treatment are perhaps the best ways of ensuring that the Defendant does not recidivate upon his release, and the Court encourages the Defendant to keep pursuing counseling treatment in the future and to abide by his terms of supervised release. The Court recommends such treatment be provided to the Defendant by the Bureau of Prisons, and that the Defendant agree to participate in the treatment if the Bureau of Prisons offers it to him.

The Court further notes that the stigma of the crime will follow the Defendant, and that this stigma adds to the punishment being imposed on the Defendant by the Court. Being deprived of full participation in civic life due to this conviction, both through legal loss of privileges and the social stigma attached to the offense, is an additional substantial punishment that hits an individual with the background of the Defendant especially hard. The inability to vote or serve on a jury are further reminders of the Defendant's crime that will haunt him for the rest of his life. The Court believes this sentence will promote respect for the law, in that both the term of imprisonment and the length of supervision and associated conditions are serious penalties for a serious offense. The Defendant will be incarcerated for some of the best years of his life, during which his teenage daughters will be growing into adults and possibly be beginning their own families. The Court further believes that this is a just punishment, as the sentence reflects the seriousness of the offense and the associated impact the crime has on children, while also reflecting the fact that the Defendant has lived an admirable life until the commission of this crime.

The Court has also considered the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, and believes that the Defendant's aforementioned supportive family and community, charitable works, and honorable military service, are factors that distinguish this Defendant from most offenders. That said, the horrific nature of some of the images, and the fact that the Defendant was trading the child pornography almost daily, and thereby actively and consistently perpetuating the market for this material, warrants a sentence above the mandatory minimum. A sentence near the top of the statute like the advisory

**2.** These conditions are noted in the Judgment and Commitment Order accompanying this opinion.

guideline suggests, however, would only create unwarranted similarities between defendants like this one with no criminal history, and defendants with significant criminal history who will hit the statutory maximum sentence of 20 years under the guideline by virtue of their criminal history. *See Gall,* 128 S.Ct. at 600 (stating that "it is perfectly clear that the District Judge ... also considered the need to avoid unwarranted *similarities* among other co-conspirators who were not similarly situated"). While the Defendant is not the least culpable type of offender that the Court has sentenced for this type of offense, he is no where near the worst of the offenders that commit this type of offense.

## IV. CONCLUSION

After considering all the factors in the sentencing statute, the Court believes the sentence of 90 months imprisonment, followed by five years of supervised release with stringent conditions, is a sentence that is sufficient but not greater than necessary to effectuate the goals of sentencing in this case. The Defendant must pay the required $100 to the crime victims' fund. In light of the Defendant's financial condition, the Court believes a fine of $10,000 is also appropriate. Given the hardships the sentence will impose on the Defendant's family, the Court does not believe a higher fine is warranted.

IT IS SO ORDERED.