UNITED STATES of America,
Plaintiff,

v.

Heather FIORELLA a/k/a Heather Gonsorcik, Defendant.

No. 07–CR–60–LRR.

United States District Court,
N.D. Iowa,
Cedar Rapids Division.

Feb. 11, 2009.

Ian Thornhill, US Attorney's Office, Cedar Rapids, IA, for Plaintiff.

Michael K. Lahammer, Lahammer Law Firm, PC, Cedar Rapids, IA, for Defendant.

### SENTENCING MEMORANDUM

LINDA R. READE, Chief Judge.

## TABLE OF CONTENTS

I. INTRODUCTION ...................................................1061

II. RELEVANT PRIOR PROCEEDINGS .....................................1061
 A. Second Superseding Indictment .......................................1061
 B. Shuler ..............................................................1061
 C. Defendant ...........................................................1062

III. SENTENCING FRAMEWORK ..........................................1063

IV. EVIDENTIARY RULES ..............................................1063

V. ALLEGATIONS OF DOMESTIC ABUSE ..................................1064

VI. ADVISORY SENTENCING GUIDELINES RANGE ..........................1065
 A. Possession of Child Pornography—USSG § 2G2.2 ........................1065
 1. Sadistic, Masochistic or Otherwise Violent Photographs—USSG
 § 2G2.2(b)(4) ...............................................1065
 2. Pattern of Activity—USSG § 2G2.2(b)(5) .........................1066
 3. Number of Images—USSG § 2G2.2(b)(7)(D) ........................1067
 4. Cross–Reference—USSG § 2G2.2(c)(1) ...........................1068
 a. K.G. .....................................................1068
 b. M.G. ....................................................1069
 c. Application ...............................................1070
 B. Sexually Exploiting Minors—USSG § 2G2.1 ...........................1070
 1. K.G ...........................................................1070
 2. M.B. ..........................................................1070
 C. Obstruction of Justice—§ 3C1.1 .....................................1070
 D. Multiple Count Adjustment—USSG § 3D1.4 ...........................1071
 E. Acceptance of Responsibility—USSG § 3E1.1 ..........................1072
 F. Range ..............................................................1073

VII. MOTION FOR DOWNWARD VARIANCE ................................1073

VIII. DISPOSITION ..................................................1076

## I. INTRODUCTION

The matter before the court is the sentencing of Defendant Heather Fiorella a/k/a Heather Gonsorcik.

## II. RELEVANT PRIOR PROCEEDINGS

### A. Second Superseding Indictment

On October 24, 2007, a grand jury returned a five-count Second Superseding Indictment (docket no. 56) against Defendant and John Shuler. Count 1 charged Defendant and Shuler with Conspiracy to Sexually Exploit Children, in violation of 18 U.S.C. § 2251(a) and (e). Count 2 charged Defendant with Permitting a Minor Daughter to Engage in Sexually Explicit Conduct for the Purpose of Producing a Visual Depiction of Such Conduct, in violation of 18 U.S.C. § 2251(b) and (e). Count 3 charged Defendant and Shuler with Sexual Exploitation of a Child, in violation of 18 U.S.C. § 2251(a) and (e) and § 2. Count 4 charged Defendant and Shuler with Attempted Sexual Exploitation of a Child, in violation of 18 U.S.C. § 2251(a) and (e) and § 2. Count 5 charged Defendant and Shuler with Possession of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2) and § 2.

### B. Shuler

On October 26, 2007, Shuler appeared before a United States Magistrate Judge and pled guilty to Counts 1 and 3 of the Second Superseding Indictment. Shuler pled guilty pursuant to a Plea Agreement (docket no. 61–2), in which the government agreed to move to dismiss Counts 4 and 5 at the time of sentencing. On November 13, 2007, the undersigned accepted Shuler's guilty plea.

On September 9, 2008, the undersigned presided over Shuler's sentencing hearing. The undersigned determined that Shuler's advisory Sentencing Guidelines range was life imprisonment. Shuler had a total offense level of 43 and was a Criminal History Category II. After considering all of the factors at 18 U.S.C. § 3553(a), the undersigned sentenced Shuler to 470 months of imprisonment on Counts 1 and 3 and dismissed Counts 4 and 5.[1]

The undersigned also announced an alternative sentence for Shuler in the event the Eighth Circuit Court of Appeals found error in one discrete aspect of the calculation of his advisory Sentencing Guidelines range. Specifically, the undersigned held that, if the Eighth Circuit Court of Appeals determined the undersigned wrongly held that Shuler was subject to a four-level increase pursuant to USSG § 2G2.1(b)(4), the court would nonetheless vary upward and impose a 470–month sentence.[2]

---

1. Counts 1 and 3 each required a sentence of no less than fifteen years but no more than thirty years of imprisonment. The undersigned ordered the statutory maximum 360–month term of imprisonment on each of Counts 1 and 3. However, the undersigned ordered that 250 of the months imposed on Count 3 run concurrently with the term of imprisonment imposed on Count 1.

2. For a discussion of the ability of a district court judge to impose an alternative variance, see *United States v. Papakee*, 550 F.Supp.2d 991, 1003–04 (N.D.Iowa 2008). The court notes that, after *Papakee*, the Eighth Circuit Court of Appeals explicitly encouraged district courts to "to state whether its resolution of [a Guidelines] issue affected its ultimate determination of a reasonable sentence." *United States v. Vickers*, 528 F.3d 1116, 1121 (8th Cir.2008). In doing so, the majority of the *Vickers* panel parted ways with Judge Shepherd, who was "reluctant to suggest with certainty that an incorrect Guidelines range does not require remand, even if the district court states that such error did not affect its imposition of the sentence." *Id.* at 1123 (Shepherd, J., concurring).

On September 22, 2008, Shuler filed a Notice of Appeal (docket no. 123) to the Eighth Circuit Court of Appeals.

### C. Defendant

On December 11, 2007, Defendant appeared before the Magistrate Judge, waived her right to indictment and pled guilty to a three-count Third Superseding Information ("Superseding Information") (docket no. 93). All three counts charged Defendant with Possession of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2). Defendant pled guilty pursuant to a Plea Agreement (docket no. 98–2). On December 12, 2007, the undersigned accepted Defendant's guilty plea.

On May 16, 2008, the United States Probation Office ("USPO") prepared Defendant's Presentence Investigation Report ("PSIR"). Defendant and the government objected to the PSIR. On August 26, 2008, the USPO revised the PSIR.

On October 10, 2008, the government filed a Sentencing Memorandum (docket no. 130). On the same date, Defendant filed a Sentencing Memorandum (docket no. 131). On October 15, 2008, Defendant filed a Revised Sentencing Memorandum (docket no. 135). On October 20, 2008, the government filed a Response (docket no. 137). On October 22, 2008, Defendant filed a Second Revised Sentencing Memorandum (docket no. 138). On October 23, 2008, the government filed a Second Response (docket no. 139).

On October 24, 2008, the court commenced Defendant's sentencing hearing ("Hearing"). Assistant United States Attorney Sean R. Berry represented the government. Attorney Michael K. Lahammer represented Defendant, who was personally present.

At the Hearing, the court (1) received evidence; (2) accepted the parties' stipulation that a certain disc contained child pornography and videos of Defendant performing sexual acts on a number of males; (3) heard the testimony of one witness, Ms. Mary Ann Pedde; (4) received argument on all outstanding sentencing issues; and (5) heard Defendant's allocution. Because of the factual and legal complexity of the sentencing issues, the court reserved ruling pending the instant written sentencing memorandum opinion. The court advised the parties it would take the issues under advisement, issue a written opinion and then reconvene the Hearing to impose sentence.

While the sentencing issues were under advisement, the government requested a status conference. On December 15, 2008, counsel for the government and Defendant appeared in chambers for the status conference. The government alerted the court that Shuler was raising a new argument to the Eighth Circuit Court of Appeals as to why a four-level enhancement under USSG § 2G2.1(b)(4) for possession of sadistic, masochistic or otherwise violent child pornography was not appropriate in his case. Namely, Shuler was advancing the purely legal argument that a § 2G2.1(b)(4) enhancement does not apply to a defendant who does not produce the sadistic, masochistic or otherwise violent child pornography he is found to have possessed. (In the district court, Shuler had only asserted, on purely factual grounds, that he had not possessed certain sadistic, masochistic or otherwise violent child pornography.) Because the government believes Defendant is similarly situated to Shuler for purposes of the USSG § 2G2.1(b)(4), the government alerted counsel for Defendant to Shuler's new legal argument. The government expressed the desire to litigate this new legal argument before the undersigned in Defen-

dant's case to avoid plain-error review before the Eighth Circuit Court of Appeals.

Both parties requested the opportunity to brief the new legal issue. The court granted the parties' joint request. On January 19, 2009, Defendant filed a Supplemental Sentencing Memorandum (docket no. 144). On the same date, the government filed a Supplemental Sentencing Memorandum (docket no. 145).

All of the contested legal and factual issues in Defendant's sentencing are now fully submitted and ready for decision. On February 19, 2009, at 8:30 a.m., in the Temporary Courthouse in Cedar Rapids, Iowa, the court shall reconvene the Hearing and impose sentence in a manner consistent with the instant Sentencing Memorandum.

### III. SENTENCING FRAMEWORK

■ A "district court should begin [a sentencing proceeding] with a correct calculation of the [defendant's] advisory Sentencing Guidelines range." *United States v. Braggs*, 511 F.3d 808, 812 (8th Cir.2008). The defendant's advisory Sentencing Guidelines range "is arrived at after determining the appropriate Guidelines range and evaluating whether any traditional Guidelines departures are warranted." *United States v. Washington*, 515 F.3d 861, 865 (8th Cir.2008).

■ "[A]fter giving both parties a chance to argue for the sentence they deem appropriate, the court should consider all of the factors listed in 18 U.S.C. § 3553(a) to determine whether they support the sentence requested by either party." *Braggs*, 511 F.3d at 812. "The district court may not assume that the Guidelines range is reasonable, but instead 'must make an individualized assessment based on the facts presented.' " *Id.* (quoting *Gall v. United States*, 552 U.S.

38, 128 S.Ct. 586, 597, 169 L.Ed.2d 445 (2007)); *see, e.g., Nelson v. United States*, — U.S. ——, 129 S.Ct. 890, 892, 172 L.Ed.2d 719 (2009) (per curiam) ("Our cases do not allow a sentencing court to presume that a sentence within the applicable Guidelines range is reasonable.").

■ The district court "has substantial latitude to determine how much weight to give the various factors under § 3553(a)." *United States v. Ruelas–Mendez*, 556 F.3d 655, 657 (8th Cir.2009). "If the court determines that a sentence outside of the Guidelines is called for, it 'must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.' " *Braggs*, 511 F.3d at 812 (quoting *Gall*, 128 S.Ct. at 597). "The sentence chosen should be adequately explained so as 'to allow for meaningful appellate review and to promote the perception of fair sentencing.' " *Id.*

### IV. EVIDENTIARY RULES

■ The court makes its findings of fact by a preponderance of the evidence. *See, e.g., United States v. Bah*, 439 F.3d 423, 426 n. 1 (8th Cir.2006) ("[J]udicial fact-finding using a preponderance of the evidence standard is permitted provided that the [Sentencing Guidelines] are applied in an advisory manner.") Generally, the government bears the burden of proof. *United States v. Flores*, 362 F.3d 1030, 1037 (8th Cir.2004) (stating that the government bears the burden to prove sentencing enhancements). However, Defendant bears the burden of proving she has accepted responsibility for her crimes. *United States v. Lussier*, 423 F.3d 838, 843 (8th Cir.2005) (holding that defendant had the burden of proving a reduction in his offense level under the advisory Sentencing Guidelines).

 The court considers a wide variety of evidence, including the undisputed portions of the PSIR, the stipulated facts in the Plea Agreement and the testimony and other evidence that the parties introduced at the Hearing. The court does not "put on blinders" and only consider the evidence directly underlying Defendant's three offenses of conviction. In calculating Defendant's Guidelines range, for example, the court applies the familiar doctrine of relevant conduct. *See* USSG § 1B1.3. The Eighth Circuit Court of Appeals has repeatedly held that a district court may consider uncharged, dismissed and even acquitted conduct at sentencing. *See, e.g., United States v. Whiting*, 522 F.3d 845, 850 (8th Cir.2008); *United States v. Bradford*, 499 F.3d 910, 922 (8th Cir.2007), *cert. denied*, —— U.S. ——, 128 S.Ct. 1446, 170 L.Ed.2d 278 (2008). When relevant and "accompanied by sufficient indicia of reliability to support the conclusion that it [was] probably accurate," the court credits hearsay. *United States v. Sharpfish*, 408 F.3d 507, 511 (8th Cir.2005).

The parties have presented the court with divergent interpretations of the evidence. Defendant contests many of the USPO's factual allegations, including most of the "Offense Conduct" section of the PSIR. *See* PSIR at ¶¶ 15–30. In Part V *infra*, the court considers Defendant's allegations of domestic abuse, an area of factual dispute that pervades many of the issues in this sentencing. The court resolves the remainder of the parties' material factual disputes in Part VI *infra*, in conjunction with its discussion of the legal issues.

## V. ALLEGATIONS OF DOMESTIC ABUSE

Defendant asserts through her attorney that she was a victim of domestic abuse at the time she committed the crimes in the Superseding Information. She alleges Shuler abused and controlled her.

The court finds Defendant was not a victim of domestic abuse at any time relevant to this case. There is no credible evidence to support Defendant's claims. Likewise, there is no credible evidence Shuler controlled Defendant. The court finds Defendant had full access to the various computers, cameras, discs, VCR tapes, photographs and other media in her home.

The court finds it is more probable than not that Defendant invented her allegations of domestic abuse in an attempt to minimize her sentence. The timing of Defendant's claims of domestic abuse is highly suspect. There is no documented history of domestic abuse with the police or medical providers. There is no report from any independent witnesses that Defendant was a victim of domestic abuse. The court was required to view Defendant totally nude in Government Exhibit 1 and saw no evidence of injury on her body.

Before it suited her arguments for a lower total offense level under the Guidelines or a downward variance, Defendant did not consistently claim Shuler abused her. During a psychological assessment in June of 2007, Defendant described her relationship with Shuler as "very strong, very good, and comfortable" and "denie[d] any history of abuse or trauma." Gov't Ex. 6, at 3–4. In March of 2007, shortly after her arrest, Defendant told a social worker she and Shuler were "both independent and like to be in control of a situation." Gov't Ex. 5, at 4. She stated Shuler had been "recently" diagnosed with bi-polar personality disorder and had started medication that kept him from becoming angry. *Id.* She made no mention of domestic abuse. In anticipation of her interview with the USPO for purposes of preparation of the PSIR, however, Defendant began asserting she suffered "exten-

sive, severe physical and mental abuse" at the hands of Shuler. Gov't Ex. 4, at 2. In her allocution letter, Defendant paints herself as a the victim of methamphetamine and her "manipulative and abusive boyfriend." Def.'s Ex. A1, at 1.

Defendant has never testified under oath that she was a victim of domestic abuse. The testimony of Mary Ann Pedde, an advocate who works for a local domestic violence program, was credible but had little bearing on this case. Ms. Pedde's opinions about the behaviors and characteristics of domestic abusers and their victims begged the ultimate question as to whether Defendant was ever a victim of domestic violence. Ms. Pedde had never spoken with Defendant and knew nothing about the facts of this case.

Simply put, there is scant evidence to support Defendant's claims of domestic abuse or that Shuler restricted access to his computer or to anything else in the home. All credible evidence is to the contrary. The court does not believe Shuler abused or controlled Defendant. They were partners in every sense of the word.

## VI. ADVISORY SENTENCING GUIDELINES RANGE

The parties agree the applicable sentencing guideline for Defendant's three counts of conviction for Possession of Child Pornography is USSG § 2G2.2. *See* USSG App'x A. Counts 1, 2 and 3 of the Superseding Information are grouped together, pursuant to USSG § 3D1.2(d). The offense level of this group is the offense level that corresponds to the aggregate quantity, *i.e.*, the total number of images of child pornography Defendant possessed. *Id.* § 3D1.3.

The parties agree Defendant's base offense level is **18**. *Id.* § 2G2.2(a)(1). The parties also agree that a **two-level** upward adjustment pursuant to USSG

§ 2G2.2(b)(2) is appropriate, because Defendant possessed material involving a minor younger than twelve years old. In her plea agreement, Defendant admitted she possessed pornographic photographs of her eleven-year-old daughter, K.G., in mid–2005 and early 2007. Finally, the parties agree that a **two-level** upward adjustment pursuant to USSG § 2G2.2(b)(6) is appropriate, because Defendant used a computer to possess child pornography. In her plea agreement, Defendant admitted she knowingly possessed a computer on which pornographic photographs of K.G. were digitally stored. Therefore, the parties agree that Defendant's total adjusted offense level is at least **22**.

All other advisory Guidelines adjustments are in dispute. The court considers each disputed Guidelines issue, in turn.

### A. Possession of Child Pornography— USSG § 2G2.2

#### 1. Sadistic, Masochistic or Otherwise Violent Photographs—USSG § 2G2.2(b)(4)

The first issue is whether Defendant is subject to a four-level enhancement pursuant to USSG § 2G2.2(b)(4), because she possessed sadistic, masochistic or otherwise violent child pornography. It is undisputed that law enforcement officers found sadistic, masochistic and otherwise violent child pornography in and adjacent to a computer in the basement of the home Defendant shared with Shuler. Defendant characterizes this computer as "Shuler's computer" and denies she possessed any of the sadistic, masochistic and otherwise violent child pornography found in and near it. Indeed, Defendant disclaims any knowledge of sadistic, masochistic or otherwise violent child pornography in her home. Defendant asserts she has no interest in child pornography. Defendant claims Shuler was controlling and did not

permit her to use the computer in the basement or view any of the nearby discs. Defendant does not deny that she possessed child pornography as alleged in the Superseding Information but insists she was only following Defendant's orders to do so.

 The court finds by a preponderance of the evidence that Defendant's offense involved sadistic, masochistic or otherwise violent child pornography. The court finds it more probable than not that, at the very least, Defendant and Shuler jointly possessed the computer and the discs in the basement. *United States v. Cantrell*, 530 F.3d 684, 693–94 (8th Cir. 2008) (recognizing the many forms of possession, including sole, joint, actual and constructive possession). The computer and the discs were found in the basement of Defendant's own home. There is no evidence to support Defendant's self-serving assertion that she did not have access to the computer in the basement. There is no evidence the basement was locked. The computer and discs at issue were sitting in the open. They were not in locked containers, and there is no evidence of any password protections. As indicated in Part IV *supra*, the court does not believe Defendant's allegations of domestic abuse or controlling behavior on the part of Shuler.

Defendant admitted in her plea agreement that she possessed child pornography, which was stored on a computer and at least one disc. Although the plea agreement is silent as to the precise identity of the computer or the disc(s) involved, Defendant later admitted through counsel that she downloaded pornographic images of K.G. from a camera to *"his"* computer and copied the images to a disc stored

nearby. Gov't Ex. 4, at 2 (emphasis added). Further, among the sadistic, masochistic or otherwise violent child pornography found in Defendant's basement, law enforcement officers found pornographic photographs of K.G. and video clips of Defendant performing sexual acts on a number of men. Defendant cannot credibly disclaim having a sexual interest in children in light of her actions on Government Exhibit 1, wherein she is videotaped grooming a child for the purpose of making child pornography and cajoling the child to touch Defendant's breast.[3]

Accordingly, the court finds Defendant is properly scored with a **four-level** enhancement for possession of materials portraying sadistic or masochistic conduct or other depictions of violence. This brings Defendant's adjusted offense level to at least **26.**

### 2. Pattern of Activity—USSG § 2G2.2(b)(5)

Section 2G2.2(b)(5) provides: "If the defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor, increase by **5** levels." USSG § 2G2.2(b)(5) (emphasis in original).

> "Pattern of activity involving the sexual abuse or exploitation of a minor" means any combination of two or more separate instances of the sexual abuse or sexual exploitation of a minor by the defendant, whether or not the abuse or exploitation (A) occurred during the course of the offense; (B) involved the same minor; or (C) resulted in a conviction for such conduct.

*Id.* § 2G2.2, cmt. (n.1). The conduct considered for a USSG § 2G2.2 enhancement " 'is broader than the scope of relevant

---

**3.** The court describes Defendant's actions on Government Exhibit 1 *ad nauseum* in Part

VI.A.4.

conduct typically considered under § 1B1.3.'" *United States v. Ashley*, 342 F.3d 850, 852 (8th Cir.2003) (quoting U.S. Sentencing Comm'n Guidelines Manual, App'x C, at 373). The enhancement applies "whether or not the abuse or exploitation ... occurred during the course of the offense." USSG § 2G2.2, cmt. (n.1); *see, e.g., Ashley*, 342 F.3d at 852; *United States v. Hunter*, 511 F.Supp.2d 961, 968–69 (N.D.Iowa 2006), *aff'd*, 505 F.3d 829 (8th Cir.2007). "Sexual abuse or exploitation" includes "conduct described in 18 U.S.C. ... § 2251...." USSG § 2G2.2, cmt. (n.1). However, "sexual abuse or exploitation of a minor" does not include "possession, receipt, or trafficking in material relating to the sexual abuse or exploitation of a minor." *Id.*

■ The court finds Defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor. Defendant sexually abused and exploited children on at least two occasions.

First, Defendant concedes Government Exhibit 1 shows she sexually abused and exploited a fourteen-year-old female, M.B. Specifically, Defendant admits she tried to persuade M.B. to perform oral sex upon Shuler in 2006. It is thus beyond dispute that Defendant has one qualifying predicate for the pattern-of-activity enhancement under USSG § 2G2.2(b)(5).

Second, the court finds Defendant sexually abused and exploited her own daughter, K.G., on at least one occasion in 2005. In July of 2007, Defendant admitted to law enforcement officers that she and Shuler had taken nude photographs of K.G. on two prior occasions in 2005. During at least one of these two "photo sessions," Defendant and Shuler took pornographic photographs of K.G. and thereby sexually abused or exploited her.

■ The court does not believe Defendant's newfound claim that her admission to law enforcement about participating in both photo sessions was a lie to protect her abuser, Shuler. Defendant now asserts she only helped Shuler take pictures of K.G.'s bare breasts in June of 2005 for "nudist-type pictures" and was not aware that Shuler took pornographic photographs at a second session in July of 2005. The court finds Defendant's newfound claim is wholly self-serving and illogical. The claim does not make sense when her admission to law enforcement officers *implicated* Shuler.[4]

Accordingly, the court finds Defendant is properly scored with a **five-level** enhancement because she engaged in a pattern of activity involving the sexual abuse or exploitation of a minor. This brings Defendant's adjusted offense level to at least **31**.

### 3. Number of Images–USSG § 2G2.2(b)(7)(D)

■ Section 2G2.2(b)(7)(D) provides that, if a defendant's offense involved 600 or more images of child pornography, the defendant is subject to a five-level enhancement. Defendant does not dispute

---

**4.** The government has not established that sexually explicit photographs of K.G. were taken during both photo sessions. Accordingly, Defendant's actions with respect to K.G. do not, standing alone, establish a pattern to trigger the enhancement. While it is possible that Defendant and Shuler took pornographic photographs of K.G. at both photo sessions in 2005, it is equally probable that Defendant and Shuler took the pornographic photo-

graphs of K.G. during only one of the two photo sessions and only took "child erotica" of K.G. at the other session. Production of child erotica does not constitute sexual abuse or exploitation under this guideline. *See, e.g., United States v. Pharis*, 176 F.3d 434, 436–37 (8th Cir.1999) (holding that, to establish a pattern of sexual abuse or exploitation, there must be physical contact with a child or use of a child in a pornographic manner).

that law enforcement officers found more than 600 images of child pornography in and around the computer in her basement. Rather, she claims she should not be held accountable for these images for the same reasons she should not be held accountable for the sadistic, masochistic and otherwise violent images found in the same place. She concedes she should be held liable for the 600 images if she is held liable for the sadistic, masochistic and otherwise violent images; the two arguments rise or fall together. The court finds Defendant possessed more than 600 images of child pornography for reasons set forth in Part VI.A.1 *supra.*

Accordingly, the court holds Defendant is properly scored with a **five-level** enhancement under § 2G2.2(b)(7)(D). This brings Defendant's adjusted offense level to at least **36.**

### 4. Cross–Reference—USSG § 2G2.2(c)(1)

As a general rule, defendants convicted of possession of child pornography are sentenced under § 2G2.2. However, "[i]f the offense involved causing ... a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct" the court should ordinarily apply the cross-reference in § 2G2.2(c)(1) to § 2G2.1.[5]

"The cross reference in subsection (c)(1) is to be construed broadly and includes all instances where the offense involved employing, using, persuading, inducing, enticing, coercing, transporting, permitting, or offering or seeking by notice or advertisement, a minor to engage in sexually explicit conduct for the purpose of

producing any visual depiction of such conduct."

*United States v. Starr,* 533 F.3d 985, 1001 (8th Cir.2008) (quoting USSG § 2G2.1, cmt. (n.5)), *aff'g* 486 F.Supp.2d 940 (N.D.Iowa 2007). "The cross-reference merely implements the common sense notion that a receiver or possessor who has manufactured the pornography in his possession is both more culpable and more dangerous than the one who has received or possessed the pornography and no more." *United States v. Dawn,* 129 F.3d 878, 884 (7th Cir.1997); *Starr,* 486 F.Supp.2d at 945.

#### a. K.G.

The court holds the cross-reference applies, because on at least one occasion in 2005, Defendant and Shuler caused, used, persuaded, induced and enticed K.G. to pose for pornographic photographs. Defendant and Shuler kept pestering K.G. to allow them to take pornographic photographs on the premise that K.G. "would be able to remember what [K.G.] looked like" at the age of ten- or eleven-years old. *See* Def. Ex. G, at 7–8. Indeed, Defendant and Shuler repeatedly pressured K.G. to pose for the pornographic photographs until K.G. relented to their demands. Defendant herself admitted she (1) discussed nude photographs with K.G.; (2) was present during two photo sessions in 2005; and (3) downloaded pornographic photographs of K.G. from the camera onto a computer in the basement and then copied the photos from the computer to a computer disc. Again, Defendant's newfound claim that she was not a willing participant in procuring child pornography is contrary to the evidence and inherently incredible when

---

**5.** The cross-reference only applies if the resulting offense level in USSG § 2G2.1 would be greater than the resulting offense level in USSG § 2G2.2. USSG § 2G2.2(c)(1). Here, the parties do not dispute that application of the cross-reference results in a greater offense level.

all the facts and circumstances of the case are known. *See supra* Parts V & VI.A.2.

### b. M.B.

In the alternative, the court holds the cross-reference applies because Defendant and Shuler attempted to use, persuade, induce and entice another female child, M.B., to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct. The salacious details are captured on a videotape, Government Exhibit 1. The court makes the following findings of fact regarding Defendant's encounter with M.B.: [6]

In mid–2006, M.B. visited the home of Defendant and Shuler in Cedar Rapids, Iowa. Before M.B. arrived, Shuler activated a hidden video camera in one of the rooms in the home. Shuler and Defendant knew the camera was pre-focused on an overstuffed chair in the room.

In anticipation of M.B.'s visit, Shuler and Defendant removed all of their clothing. When M.B. arrived, Defendant guided M.B. to the overstuffed chair so that the hidden camera would record M.B. well. Defendant then sat in a chair between the camera and M.B. M.B. was wearing a t-shirt and cut-off jeans.

M.B. told Shuler and Defendant she was only fourteen-years old. Shuler bragged that he had a large collection of pornographic videotapes. Shuler turned on a VCR and played one of the pornographic videos on a television. The sounds of sex filled the room.

Defendant and Shuler engaged in a lengthy and sexually explicit conversation with M.B. Defendant and Shuler tried to persuade M.B. to engage in sexually explicit conduct for the purpose of producing visual images of such conduct. For example, Defendant and Shuler told M.B. she should take nude pictures of herself so that, in the future, she would have a record of what she looked like at a younger age. This was one of the many techniques Defendant and Shuler employed in their attempts to make child pornography, and it was a technique they had used with success on Defendant's own daughter in the past. Defendant and Shuler asked M.B. to participate in a pornographic film–either as a performer or the camera operator. Defendant elicited from M.B. that M.B. considered herself to be bisexual.

At one point, Defendant, Shuler and M.B. left the room. They returned in various states of undress: Shuler was still nude; Defendant was wearing a towel; and M.B. was dressed in a skimpy bikini and was clutching a towel. Defendant later removed her towel and was again fully nude.

Shuler began a discussion about breasts. Shuler and Defendant urged M.B. to touch one of Defendant's breasts, and M.B. did so. Defendant suggested Defendant and M.B. compare their breasts while M.B. participated in a pornographic movie. Defendant and Shuler repeatedly flattered M.B. by suggesting that she was sexually more sophisticated than others her age, in light of her past sexual encounters and her interest in expanding her sexual horizons.

Defendant and Shuler then set up a second video camera (this time, in full view of M.B.) on a tripod in the room. Defendant and Shuler encouraged M.B. to take nude photographs or video of herself.

---

6. In Paragraphs 21 through 25 of the PSIR, a Senior United States Probation Officer attempted to describe Defendant's encounter with M.B. Mere words, however, are inadequate to convey the shocking, disgusting and predatory actions of Defendant and Shuler. In the event of an appeal, the court urges the judges of the Eighth Circuit Court of Appeals to watch this videotape.

They also tried to convince her to make videos of herself having sex with her friends.

Defendant asked M.B. whether she would perform oral sex on Shuler. Shuler demonstrated for M.B. how to use a "sex swing" and had the child try positioning herself in the swing. Defendant showed M.B. "sex toys" and a "sex gel" and encouraged her to try them. Defendant demonstrated how she positions her body when engaging in sex on top of a man. Eventually, Shuler, Defendant and M.B. left the view of the hidden video camera a second time, so that Defendant and Shuler could demonstrate sexual positions to M.B. Later, M.B. left the house and Shuler turned off the camera.

As the foregoing discussion of Government Exhibit 1 makes clear, the court finds Defendant and Shuler persuaded, induced and enticed M.B. to engage in sexual explicit conduct for the purpose of making visual depictions of such conduct. They were grooming M.B. to engage in sexually explicit conduct. Further, the court finds Defendant was aware that Shuler was secretly videotaping M.B. Defendant's denial of this fact is frivolous. Defendant intentionally escorted M.B. to the only chair in the room on which the hidden camera was fully focused. Further, Defendant periodically looked up toward the camera.

### c. Application

Accordingly, the court **applies the cross-reference found at USSG § 2G2.2(c)(1) to USSG § 2G2.1.**

### B. Sexually Exploiting Minors— USSG § 2G2.1

Because Defendant's offense involved the sexual exploitation of more than one minor, the court must proceed as if the exploitation of each minor had been contained in a separate count of conviction.

USSG § 2G2.1(d)(1) & n. 5. Consequently, Defendant's conduct with respect to K.G. and M.B. is not grouped. *Id.* § 3D1.2.

The parties agree that Defendant's base offense level with respect to each of K.G. and M.B. is **32**. *Id.* § 2G2.1(a). Further, the parties agree to the following adjustments:

### 1. K.G.

With respect to K.G., the parties agree the **four-level** adjustment under § 2G2.1(b)(1)(A) applies, because K.G. was under the age of twelve years. They also agree the **two-level** adjustment under § 2G2.1(b)(5) applies, because Defendant was K.G.'s parent. In its Supplemental Sentencing Memorandum, however, the government concedes that the court may *not* apply the four-level increase pursuant to USSG § 2G2.1(b)(4) for the reason that there is no evidence Defendant produced the sadistic, masochistic or otherwise violent child pornography that she possessed. Defendant's adjusted offense level for K.G. under Chapter 2 of the advisory Sentencing Guidelines is thus **38**.

### 2. M.B.

With respect to M.B., the parties agree that the **two-level** adjustment under § 2G2.1(b)(1)(B) applies, because M.B. was under the age of sixteen years. The parties agree no other adjustments apply. Defendant's adjusted offense level for M.B. under Chapter 2 of the advisory Sentencing Guidelines is thus **34**.

### C. Obstruction of Justice— § 3C1.1

The government argues Defendant should receive a two-level increase pursuant to USSG § 3C1.1 for obstruction of justice, because she lied to the USPO and the court in an attempt to receive a more lenient sentence. The government only

alleges Defendant obstructed justice with respect to her conduct with K.G.

 Section 3C1.1 provides:

If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense, increase the offense level by 2 levels.

USSG § 3C1.1 (emphasis in original). The government bears the burden to prove an increase for obstruction of justice is warranted. *United States v. Vinton,* 429 F.3d 811, 818 (8th Cir.2005).

 The court finds Defendant willfully obstructed and impeded the administration of justice during the course of her sentencing. Specifically, the court finds Defendant lied to the USPO and this court when she denied her involvement in producing child pornography of K.G. *See* USSG § 3C1.1, cmt. (n.4(h)) (including "providing materially false information to a probation officer in respect to a [PSIR] or other investigation for the court" as qualifying obstructive conduct); *id.* § 3C1.1, cmt. (n.4(f)) (providing materially false information to a judge is conduct constituting obstruction of justice); *United States v. Thomas,* 524 F.3d 855, 859 (8th Cir. 2008) (same). Defendant admitted to law

enforcement that she was present when the pornographic photographs of K.G. were taken; by the time she got to sentencing, she denied through her attorney in her objections to the PSIR that she was present when the photographs were taken. Defendant also submitted a letter to the court, in which she falsely contended she was the victim of domestic abuse at the hands of Shuler. Defendant repeatedly lied to the USPO and the court in an attempt to minimize her sentence. Her lies were material, because Defendant "kn[ew] that the truth would adversely affect [her] status under the Guidelines." *United States v. Lange,* 918 F.2d 707, 709 (8th Cir.1990); USSG § 3C1.1, cmt. (n.6) (" 'Material' evidence, fact, statement, or information ... means ... evidence, fact, statement, or information that, if believed, would tend to influence or affect the issue under determination.").

Accordingly, the court holds Defendant should receive a **two-level** increase, pursuant to USSG § 3C1.1, because she obstructed justice. Assuming this enhancement only applies with respect to K.G.,[7] this brings Defendant's adjusted offense level for K.G. to **40**. Defendant's adjusted offense level for M.B. remains **34**.

### D. Multiple Count Adjustment— USSG § 3D1.4

As indicated, Defendant's adjusted offense level for her first victim, K.G., is **40**. Her adjusted offense level for her second victim, M.B., is **34**. Defendant's "com-

---

**7.** The parties appear to assume the obstruction of justice enhancement is not victim-specific and would apply after the multiple count adjustment in USSG § 3D1.4. This is not correct. *See* USSG § 1B1.1 (delineating sequence for application of Guidelines); *United States v. Griggs,* 47 F.3d 827, 831 n. 2 (6th Cir.1995) ("[A]djustments are made relating to victim, role and obstruction of justice.... An adjustment for multiple counts ... is then made.... After the multiple count adjustment

has been made, the court may determine any adjustment for acceptance of responsibility...."). Here, application of the enhancement for obstruction of justice after the multiple count adjustment would result in a slightly higher Guidelines range for Defendant. Accordingly, the court applies the obstruction of justice enhancement solely with respect to K.G. and before the multiple count adjustment.

bined offense level is determined by taking the offense level applicable to the [victim] with the highest offense level and increasing that offense level by the amount indicated in the [table in § 3D1.4]." For purposes of the table, Defendant is assessed **1.5 units**. *See* USSG § 3D1.4(a) (one unit assessed for victim with highest offense level); *id.* § 3D1.4(b) (one-half unit assessed for victim 5 to 8 levels less serious than the victim with the highest offense level). Defendant's combined offense level is, therefore, **one level** greater than the adjusted offense level for K.G. That is, Defendant's combined offense level is **41**.

### E. Acceptance of Responsibility— USSG § 3E1.1

 Lastly, the court must decide whether Defendant is entitled to a two-or three-level decrease, pursuant to USSG § 3E1.1, for acceptance of responsibility. Defendant bears the burden to prove she is entitled to a downward adjustment under § 3E1.1. *United States v. Honken,* 184 F.3d 961, 968 (8th Cir.1999).

Section 3E1.1 provides:

**(a)** If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels.

USSG § 3E1.1(a) (emphasis in original). Only in extraordinary cases is a defendant entitled to a downward adjustment for acceptance of responsibility after the court has found she obstructed justice. *See Honken,* 184 F.3d at 967–68 (citing USSG § 3E1.1 cmt. (n.4)).

To determine whether a defendant qualifies for acceptance of responsibility, the court may consider various facts and circumstances, including but not limited to whether the defendant "truthfully admit[s] the conduct comprising the offense[ ] of conviction, and truthfully admit[s] or not falsely den[ies] any additional relevant conduct for which the defendant is ac-

countable...." USSG § 3E1.1, cmt. (n.1(a)). Although a defendant is not required to volunteer relevant conduct to obtain acceptance of responsibility, "a defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility[.]" *Id.*

 The court finds Defendant did not meet her burden to prove she clearly demonstrated acceptance of responsibility. The court recognizes that Defendant pled guilty to three counts of possession of child pornography and has admitted a factual basis for those offenses in the stipulation of facts to the Plea Agreement. The mere act of pleading guilty, however, does not entitle a defendant to acceptance of responsibility. *United States v. Byrd,* 76 F.3d 194, 196 (8th Cir.1996). Considering the totality of the circumstances, this is not an "extraordinary case" in which both an upward adjustment for obstruction of justice and a downward adjustment for acceptance of responsibility apply. *See Honken,* 184 F.3d at 970 ("[W]hen the Commission refers to an 'extraordinary case,' it means a situation that is extremely rare and highly exceptional. Thus the terms of § 3E1.1, application note 4 require an obstructive defendant to do more than merely cease obstructive conduct and plead guilty to the underlying offense to earn a downward adjustment for acceptance of responsibility."). Indeed, Defendant has not even admitted her obstructive conduct.

In any event, Defendant is not entitled to acceptance of responsibility because she has shifted blame to others throughout these sentencing proceedings. Defendant blames Shuler and methamphetamine use for her own foul and disgusting conduct. She portrays herself as one of Shuler's

victims or a victim of her own self-inflicted drug abuse. She has concocted false allegations of domestic abuse in an attempt to minimize her own actions. As Government Exhibit 1 demonstrates, however, Defendant is a finely tuned sexual predator of children. Defendant's attempt to minimize her role in the videotaped encounter vis-a-vis Shuler is especially disconcerting to the court. During the entire encounter with M.B., Defendant appeared relaxed and friendly. The court is left with the definite and firm opinion that Defendant was a willing and enthusiastic participant in the criminal activity for which she is now being held accountable.

Accordingly, the court holds Defendant is not entitled to a downward adjustment for acceptance of responsibility under USSG § 3E1.1. Defendant's adjusted offense level under the advisory Sentencing Guidelines remains 41.

### F. Range

Defendant is a **Criminal History Category I.** The parties agree no departures are appropriate. With a **total adjusted offense level of 41,** Defendant's advisory Sentencing Guidelines range would ordinarily be 324 to 405 months of imprisonment. Because the combined statutory maximum for Defendant's convictions on Counts 1 through 3 of the Superseding Information is 360 months of imprisonment, **Defendant's effective advisory Sentencing Guidelines range becomes 324 to 360 months of imprisonment.** *See* USSG § 5G1.1(c)(1).

### VII. MOTION FOR DOWNWARD VARIANCE

■ In pertinent part, 18 U.S.C. § 3553(a) directs the court to consider the following factors in determining the particular sentence to be imposed:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for ... the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines ... issued by the Sentencing Commission....

(5) any pertinent policy statement ... issued by the Sentencing Commission....

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). The court must "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2)" above. *Id.* However, the court need not explicitly set forth its analysis of all of the § 3553(a) factors here. *See, e.g., United States v. Lamoreaux,* 422 F.3d 750, 756 (8th Cir. 2005) (quoting *United States v. Crosby,* 397 F.3d 103, 113 (2d Cir.2005)) ("Nothing in § 3553(a) or in the *Booker* remedy opin-

ion requires 'robotic incantations' that each statutory factor has been considered.").

Defendant argues that the court should sentence her below her Guidelines range. Defendant alleges she was a victim of domestic violence. She stresses her lack of prior criminal history and places much blame on "the influences of a sexual predator like John Shuler." Def. Memo. (docket no. 135–2) at 11. She reiterates her position that she never intended to produce child pornography. She states Shuler introduced her to methamphetamine, which she used on a daily basis. She notes she went from being President of her daughter's school parent-teacher association ("PTA") to criminally possessing child pornography of her daughter. However, Defendant concedes "[t]he fact that it was her own daughter makes the conduct more egregious. . . ." *Id.*

Defendant maintains the Guidelines "should be given much less deference than usual" in her case. Defendant opines that "the guidelines for child exploitation offenses were not developed using an empirical approach by the Sentencing Commission, but rather were mainly promulgated in response to statutory directives." Addendum (docket no. 138–2), at 1 (citation omitted). Defendant invokes a series of decisions filed after *Kimbrough v. United States,* 552 U.S. 85, 128 S.Ct. 558, 169 L.Ed.2d 481 (2007), in which other district court judges have expressed dissatisfaction with Chapter 2G of the Guidelines. *See, e.g., United States v. Stern,* 590 F.Supp.2d 945, 959–61 (N.D.Ohio2008); *United States v. Baird,* 580 F.Supp.2d 889, 893–96 (D.Neb.2008); *United States v. Shipley,* 560 F.Supp.2d 739, 743–46 (S.D.Iowa 2008). One district court elaborated:

> As to any argument that the guideline reflects Congressional intent to punish child sex offenses harshly, a guideline is not a statute. The statute here provides

a broad range of punishment for this crime, and if Congress does not want the courts to try and sentence individual defendants throughout that range based on the facts and circumstances of each case, then Congress should amend the statute, rather than manipulate an advisory guideline and blunt the effectiveness and reliability of the work of the Sentencing Commission. While the Court has consulted the advice of the guidelines, the advice in this case is less reliable than in other cases where the guidelines are based on study and empirical data.

*Shipley,* 560 F.Supp.2d at 744.

■ After considering all of the factors at 18 U.S.C. § 3553(a), the court finds that a sentence within the advisory Sentencing Guidelines range is appropriate for Defendant. The court can envision cases in which domestic abuse might mitigate a defendant's criminal conduct. In the present case, however, there is no credible evidence to support Defendant's claims of domestic abuse. The court is aware it has the power to vary downward on purely policy grounds or for some alleged defect in the Guidelines. However, the court declines to follow Defendant's cited district court cases. These cases are distinguishable because they dealt with defendants who were sentenced under § 2G2.2 and not § 2G2.1. Unlike Defendant, the defendants in *Stern, Baird* and *Shipley* did not produce child pornography. The district courts in those cases criticized what they viewed as the unduly severe sentences the Guidelines advised for those who "merely" possess or barter child pornography. Defendant is not similarly situated to such defendants.

In any event, the court respectfully believes Defendant's cited district court cases were wrongly decided. In the undersigned's view, the sentences imposed in

*Stern, Baird* and *Shipley* understate the seriousness of the offenses under consideration and fail to promote respect for the law and provide just punishment. *See, e.g., Stern,* 590 F.Supp.2d at 959–61 (varying downward from 46 to 57 months of imprisonment to 12 months and 1 day imprisonment for possession of child pornography); *Baird,* 580 F.Supp.2d at 892–96 (varying downward from a Guidelines range of 46 to 57 months of imprisonment to a sentence of 24 months of imprisonment for a defendant who possessed child pornography); *Shipley,* 560 F.Supp.2d at 742–46 (varying downward from a range of 210 to 240 months of imprisonment to 90 months of imprisonment, where the defendant used a peer-to-peer file sharing program to trade hundreds of pictures of child pornography, including photographs of children under the age of twelve and sadistic, masochistic and otherwise violent photographs); *see also United States v. Hanson,* 561 F.Supp.2d 1004, 1008–1012 (E.D.Wis.2008) (varying downward from a Guidelines range of 210 to 262 months imprisonment to 72 months imprisonment for a defendant who distributed child pornography in exchange for a "thing of value," where his offense involved more than 600 images, the use of a computer, images portraying sadistic, masochistic or otherwise violent conduct, a minor under the age of twelve or a prepubescent minor). Such sentences increase sentencing disparity and afford inadequate deterrence to criminal conduct—not only to the defendant who is at risk of re-offending but also to other prospective child pornographers who might consider victimizing children. It must be emphasized that the thriving

business of child pornography, even in the case of "mere" possession, is not victimless. *See, e.g.,* Adam Walsh Child Protection and Safety Act of 2006, Pub.L. 109–248, 120 Stat. 587, 623, at § 501 (July 27, 2006) (recognizing that child pornography is "a multimillion dollar industry" that consists of "a nationwide network of individuals openly advertising their desire to exploit children"). To produce child pornography, the photographer must pose the child in a lascivious manner. This is undoubtedly a form of child sexual abuse. Congress has recognized that this abuse is repeated each and every time the child pornography is possessed or transported. *See id.* § 501(2)(D); *see also id.* § 501(1)(A) ("The illegal production, transportation, distribution, receipt, advertising and possession of child pornography ... is harmful to the psychological, emotional, and mental health of the children depicted in the child pornography...."). *But see Baird,* 580 F.Supp.2d at 895 (distinguishing a person who possesses child pornography from "an *actual* predator or abuser" (emphasis added)).[8]

In sum, the court finds that to vary downward from the advisory Sentencing Guidelines range in this case would run afoul of the statutory factors under 18 U.S.C. § 3553(a). *Cf. United States v. Kane,* 552 F.3d 748 (8th Cir.2009) (reversing downward variance for mother who repeatedly sold her daughter for sex). Specifically, the court finds that a sentence of 360 months of imprisonment is the appropriate sentence for Defendant. The Guidelines advise an appropriate sentence on the facts of this case. Defendant's conduct is horrific and reprehensible. She

---

**8.** It is easier to overlook the horrors of child pornography when, as is often the case, the material at issue is not presented to the sentencing judge. For purposes of efficiency and minimization of re-victimization of the children depicted, the government and the defen-

dant will often (and rightly so) enter into stipulations about the number and nature of the photographs at issue. But the horrors of child pornography are real even if those who sit in judgment do not have occasion to view them.

is a dangerous sexual predator of children and has a high risk to re-offend. Any sentence less than 360 months of imprisonment would be insufficient to meet the goals set forth in § 3553(a).

## VIII. DISPOSITION

Defendant is a **Criminal History Category I** with a total adjusted offense level of **41.** Her advisory Sentencing Guidelines range is **324 to 360 months of imprisonment.** After considering all of the § 3553(a) factors, the court finds **a sentence of 360 months of imprisonment is appropriate** for Defendant. The court will sentence Defendant to 120 months on each of Counts 1, 2 and 3 and run such sentences consecutively to one another to achieve the total sentence of 360 months of imprisonment.

**IT IS SO ORDERED.**